## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**COMMODITY FUTURES TRADING COMMISSION,**

Plaintiff,

v.

**SAM IKKURTY A/K/A SREENIVAS I RAO, RAVISHANKAR AVADHANAM, AND JAFIA LLC**

Defendants,

**IKKURTY CAPITAL, LLC D/B/A ROSE CITY INCOME FUND, ROSE CITY INCOME FUND II LP, AND SENECA VENTURES, LLC**

Relief Defendants.

**FILED**

MAY 10 2022 cu

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1:22-cv-02465
Judge Mary M. Rowland
Magistrate Judge Jefrey Cummings
RANDOM

## COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES AND OTHER EQUITABLE RELIEF

The Commodity Futures Trading Commission ("CFTC" or "Commission"), an independent federal agency, by and through its attorneys hereby alleges as follows:

### I.     INTRODUCTION

1.      Between at least January 2021 and the present ("Relevant Period"), Defendants Sam Ikkurty a/k/a Sreenivas I Rao ("Ikkurty"), Ravishankar Avadhanam ("Avadhanam") and Jafia, LLC ("Jafia") (collectively the "Defendants") fraudulently solicited and accepted over forty four million dollars from at least 170 members of the general public to participate in funds named Ikkurty Capital LLC d/b/a Rose City Income Fund, Rose City Income Fund II LP ("the Rose City funds") and Seneca Ventures LLC ("Seneca"), to purchase, hold and trade digital

1

assets, commodities, derivatives, swaps and commodity futures contracts. The Defendants did not trade digital assets or commodity interests with participants' funds and return profits as promised; instead they misappropriated participants' funds.

2.    Defendants misappropriated most or all of the participant funds by distributing them to other participants, in a manner akin to a Ponzi scheme, transferring funds to other accounts under the control of and for the benefit of the Defendants, and transferring funds to an off-shore entity that is associated with a cryptocurrency exchange that does not allow US persons.

3.    By engaging in this conduct and the conduct further described herein, the Defendants engaged, are engaging, or are about to engage in violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§1-26. Specifically, the Defendants have engaged, are engaging, or are about to engage in violations of Section 4o(1)(A) and (B), 7 U.S.C. § 6o(1)(A),(B), which makes it unlawful for any commodity pool operator ("CPO") "by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly"— (A) "to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant" or (B) "to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant."

4.    Furthermore, by engaging in a business that is of the nature of a commodity pool and soliciting and accepting funds for the purpose of trading in commodity interests, the Defendants have acted as a CPO without the benefit of registration with the CFTC, thereby escaping regulatory scrutiny into their activities and violating Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

5.      Through their conduct, Defendants also engaged, are engaging, or are about to

engage in manipulative and deceptive acts with respect to contracts of sale of a commodity in

interstate commerce, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Commission

Regulation ("Regulation") 180.1(a), 17 C.F.R § 180.1(a)(1)-(3) (2021).

6.      Unless immediately restrained and enjoined by this Court, the Defendants are

likely to continue engaging in the acts and practices alleged in this Complaint and funds they

fraudulently obtained are likely to be misappropriated or otherwise dissipated.  Accordingly, the

CFTC brings this action pursuant to Section 6c of the Act, 7 U.S.C. §13a-1, to enjoin

Defendants' unlawful acts and practices and to compel their compliance with the Act.  The

CFTC also seeks civil monetary penalties and remedial ancillary relief, including restitution to

defrauded participants, disgorgement, pre- and post-judgment interest, and such other equitable

relief as this Court may deem necessary.  The Commission also requests that the Court order

Relief Defendants Ikkurty Capital, LLC d/b/a Rose City Income Fund, Rose City Income Fund II

LP, and Seneca Ventures, LLC to disgorge funds they received from Defendants' illegal

activities and in which they have no legitimate interest.

## II.      JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 (codifying

federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have

original jurisdiction over civil actions commenced by the United States or by any agency

expressly authorized to sue by Act of Congress).  In addition, Section 6c(a) of the Act, 7 U.S.C.

§ 13a-1(a), provides that U.S. district courts have jurisdiction to hear actions brought by the

Commission for injunctive and other relief or to enforce compliance with the Act whenever it

shall appear to the Commission that any person has engaged, is engaging, or is about to engage

3

in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

8.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants transacted business in this District, Defendant Avadhanam resides in this District, and certain of the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

### III.      PARTIES

9.      Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with administering and enforcing the Act and CFTC Regulations.

10.     Defendant **Sam Ikkurty** ("Ikkurty") a/k/a Sreenivas I Rao resides in Portland, Oregon.  Ikkurty has never been registered with the CFTC in any capacity.

11.     Defendant **Ravishankar Avadhanam** ("Avadhanam") resides in Aurora, Illinois. Avadhanam has never been registered with the CFTC in any capacity.

12.     Defendant **Jafia, LLC** ("Jafia"), is a Florida company that Ikkurty established in 2006.  Ikkurty owns Jafia and is the sole officer, president, registered agent and authorized person for the entity.  Jafia has never been registered with the CFTC in any capacity.

13.     Relief Defendant **Ikkurty Capital LLC d/b/a Rose City Income Fund** ("Rose City Income Fund I") is a Florida corporation that was established in 2013.  Ikkurty is the Managing Member and registered agent for Rose City Income Fund I, and Jafia is the Manager. Rose City Income Fund I did not perform any legitimate services for Defendants and does not have any legitimate interest in any funds it received from or through Defendants.  Rose City Income Fund I has never been registered with the CFTC in any capacity.

4

14.     Relief Defendant **Rose City Income Fund II LP** ("Rose City") is a Delaware entity that was established on December 10, 2020, with its principal place of business in Portland, Oregon. Ikkurty is the Principal, Officer and Managing Partner of Rose City. Jafia is the General Partner of Rose City. Ikkurty and Avadhanam run Rose City. Rose City did not perform any legitimate services for Defendants and does not have any legitimate interest in any funds it received from or through Defendants. Rose City has never been registered with the CFTC in any capacity.

15.     Relief Defendant **Seneca Ventures LLC** ("Seneca Ventures" or "Seneca") is a Wyoming entity that was established on April 14, 2021. Ikkurty and Avadhanam own Seneca Ventures. Seneca Ventures did not perform any legitimate services for Defendants and does not have any legitimate interest in any funds it received from or through Defendants. Seneca Ventures has never been registered with the CFTC in any capacity.

## IV.     FACTUAL ALLEGATIONS

*Background*

16.     Beginning on or around October 1, 2017, Ikkurty launched Rose City Income Fund I, which also used the name Ikkurty Capital, LLC. Throughout the Relevant Period, the website for the fund has described the business as "a monthly income fund" "suited for income-oriented investors who depend on a steady distribution."

17.     In a September 2018 post on the Rose City Income Fund I website, Ikkurty announced, "[w]e are pleased to announce to the partners that we have a 1-year return for the fund. In a severe bear market that we are currently experiencing in digital currencies, our 1-year return is 61.78%." The post goes on to encourage investors by stating, "[c]ompounding is a powerful force in investing . . . I feel we have a long runway to achieve growth [as] a digital currency market evolves."

18.     On or about December 10, 2020, Ikkurty formally established Rose City, with himself as the Managing Member and Jafia as the Executive Officer.  Rose City's business model is purportedly to sell limited partnership interests to participants, pool the limited partners' funds, and then "buy, sell and trade digital assets on cryptocurrency exchanges."  Rose City represents that its "primary goal is to provide steady 15% per year distribution to our investors."  Rose City represents that it "generates these returns via proof-of-stake mining," and by holding exposure to digital assets like Bitcoin and Ethereum.  For example, Rose City represents that "Bitcoin is a great hedge against central banks . . . Our portfolio is ideally suited to hedge against money printing."

19.     In reality, Defendants pooled the participant funds, and then distributed the majority of those funds as "profits" to other participants in a manner akin to a Ponzi scheme, or transferred funds to accounts controlled by and for the benefit of the Defendants.

20.     Of the more than $44 million Defendants accepted from participants during the Relevant Period, they transferred more than half to other participants and to entities they own and control.  Defendants also transferred approximately $18 million to an off-shore entity that is associated with a cryptocurrency exchange that does not allow US persons.  Regardless, Defendants never returned any funds from the exchange to any Rose City or Seneca account for distribution to participants.

*Defendants' Solicitations*

21.     Throughout the Relevant Period, the Defendants have solicited participants to invest through a website, www.rosecityfund.com, on YouTube videos and through at least one limited partnership agreement they provide to participants.  Rose City's website, operated and authored by Ikkurty, represents that the fund's investment strategy is to invest "70% of the

6

fund's assets into proof-of-stake mining coins, using market-neutral strategies while having 30% of the fund [] exposed to Crypto assets like Bitcoin, Ethereum and other diversified crypto assets." Rose City's website claims that its philosophy is to "earn income with exposure to crypto assets" and the fund's goal is "to provide a steady income to our investors every month, while providing the upside to the crypto markets." Specifically, Rose City states that, "[o]ur number one goal is to provide a steady 15% per year in distribution, payable monthly."

22. On or about January 1, 2021, Defendants began soliciting participants to join the Rose City income fund by signing the Rose City Income Fund Limited Partnership Agreement as Limited Partners (the "Agreement").

23. The Agreement identifies Jafia as the "General Partner" to the Agreement and all the participants who sign copies of the Agreement as the "Limited Partners."

24. Pursuant to Section 1.03 of the Agreement, the purpose of the partnership is "to serve as a fund through which the assets of its Partners will be utilized to invest, hold and trade in digital currencies, cryptoassets, cryptocurrencies, decentralized application tokens and protocol tokens . . . and other financial instruments of any name and nature which exist now or are hereafter created . . ."

25. Pursuant to Section 3.02, Powers of the General Partner, the General Partner maintains, in relevant part, the following powers:

> (a) To purchase, hold, sell, sell short, cover and otherwise deal in Digital Assets and financial instruments of any sort and rights therein, including restricted and privately issued instruments, on margin or otherwise;
>
> (b) To loan its Digital Assets to other market participants and engage in "staking" of Digital Assets;

(c) Write, purchase, hold, sell and otherwise deal in put and call options of any sort and in any combination thereof;

(d) To purchase, hold, sell, sell short and otherwise deal in commodities, commodity contracts, commodity futures, financial futures (including index futures) and options in respect thereof;

(e) To purchase, hold, sell, sell short and otherwise deal in currencies, options thereon and rights therein, including forward foreign currency exchange contracts;

(f) To purchase, hold, sell and otherwise deal in derivatives, swap contracts, partnership interest, interests in other investment companies or any other financial instruments which exist now or are hereafter created; and

(g) To conduct margin accounts with brokers …

26.     Pursuant to Section 4.04 of the Agreement, the General Partner is entitled to a "Management Fee," to be "calculated at an annual rate of 2.0% of each Capital Account." Capital Account is defined in the Agreement to include the limited partner's capital contributions, adjusted for net losses and profits, less withdrawals, taxes and Management Fee payments.

27.     By February 1, 2021, at least one individual signed the Agreement and joined Rose City's Limited Partnership.

28.     Beginning in at least July 2021, Defendants solicited participants through a YouTube video that represented to prospective participants:

- "Rule 1: Pay 18% per year interest on our Crypto Savings Note on a monthly basis"

- "We offer a promissory note enforceable by law in the USA that pays 18% interest per year and returns the original principal at the end of 18 months. This is backed by the full faith and credit of Jafia LLC."

29.     In the same YouTube video, Defendants solicit participants by touting Rose City's "proven track record of generating a 48% yield" and go on to assure participants that Rose City "make[s] sure that the money you start with will not be lost."

*Defendants' Solicitations Include False and Misleading Statements and Omissions*

30.     Defendants included false and misleading statements and omissions of material facts intentionally or recklessly in their solicitations.

31.     Among other things, Defendants falsely misrepresent that 70% of the fund's assets are invested in proof-of-stake mining coins and also that the fund "earns" income from these assets. Defendants falsely misrepresent that the fund will "invest, hold and trade in digital currencies," "purchase, hold, sell, sell short and otherwise deal in commodities, commodity contracts, commodity futures, financial futures . . . options . . . derivatives, swap contracts," and that participants would earn 15% annual returns on their investment. Also, Defendants falsely misrepresent that participants' principal investment would not be lost, that Rose City was generating a 48% yield, and that the fund's management fee was 2%.

32.     Among other things, Defendants omitted that the fund was not earning profits and that Defendants were misappropriating participant funds by transferring them to other participants, to entities the Defendants owned and/or controlled, and also to an off-shore entity.

33.     Defendants made these misrepresentations, false statements and omissions to solicit participants to invest their money with them.

9

*The Misappropriation*

34.     During the Relevant Period, Defendants accepted participant funds into bank accounts in the names of Seneca Ventures and/or Rose City.  Neither Seneca Ventures nor Rose City performed any legitimate services for Defendants and neither have any legitimate interest in or entitlement to the funds.

35.     On April 15, 2021, Defendant Avadhanam opened a business checking account for Seneca Ventures with Bank A.  Avadhanam was the only signer for this account.

36.     Between April 15, 2021 and June 4, 2021, Defendants Ikkurty and Avadhanam accepted deposits of $1,707,000 from 24 participants into the Seneca Ventures account at Bank A.  According to memos on some of the participants' wire deposits, the funds were for, among other things, "investment," "investment Rose City," "Rose City Fund II," and "ATTN: Ravishankar Avadhanam, Sam."

37.     Between April 15, 2021, and June 4, 2021, Defendants Ikkurty and Avadhanam did not transfer funds from Bank A to buy, sell, or trade digital assets.  Rather, during that time period, Defendants Ikkurty and Avadhanam transferred $1,686,829 of participant funds to other accounts under the control of and for the benefit of the Defendants.

38.     Bank A was closed in June 2021.

39.     Then, in June 2021, Defendants Ikkurty and Avadhanam opened another business checking account with Bank B in the name of Seneca Ventures.  In so doing, Seneca represented itself to be a "technology consulting firm in software programming."  Ikkurty and Avadhanam are both signers on Seneca Ventures' account at Bank B.

40.     Between June 2021 and January 2022, Defendants Ikkurty and Avadhanam accepted deposits of at least $10,400,000 from at least 122 participants into the Seneca Ventures

account at Bank B.  According to memos on these wires, the funds were for the purpose of "investment", "initial investment" and "additional investment."

41.     During this period, Defendants Ikkurty and Avadhanam did not transfer any funds from Bank B to a trading account at any "exchange" or dealer.  Rather, during that time period, Defendants Ikkurty and Avadhanam transferred $25,000 of participant funds to other participants and at least $9,916,333 of participant funds to other accounts under the control of and for the benefit of the Defendants.

42.     Bank B was closed in January 2022.

43.     In December 2021, Defendants Ikkurty and Avadhanam opened an account for Seneca Ventures at Bank C.  Between December 2021 and the present, Defendants accepted $5,400,000 of funds into this account.  The account at Bank C remains open.

44.     On May 18, 2021, the Defendant Ikkurty opened a business bank account for Rose City at Bank D.  According to the account opening application, the purpose of the account is "trading" and the anticipated account activity was "Funds In/Out from Operating Account (LP Subscriptions)/ wires to/from exchanges (Coinbase Pro) to buy crypto assets."  Defendant Ikkurty further described the types of transactions as "[f]unds in from selling limited partnership interests . . ."  Ikkurty is the only Principal/Officer and authorized signer on the account.

45.     Between May 18, 2021 and March 31, 2022, Defendants Ikkurty and Avadhanam accepted at least $32,307,846 from at least 42 participants into the Rose City account at Bank D.

46.     In addition, during this same period, at least $10,621,162 of participant funds from the Seneca Ventures accounts at Bank A and Bank B were transferred to the Rose City account at Bank D.

47.     Between May 18, 2021 and March 31, 2022, Defendants Ikkurty and Avadhanam transferred at least $23,908,892 of participant funds from the Rose City account to an account belonging to Jafia, and at least $860,502 to an account under the control of and for the benefit of the Defendants.

48.     Between, May 18, 2021 and March 31, 2022, Defendants transferred approximately $5,846,720 of participant funds from the Rose City account at Bank D to other participants.

49.     During this same time period, Rose City also transferred $9,200,000 from the Rose City account at Bank D to an off-shore entity associated with a crypto exchange.

50.     In addition to the Seneca and Rose City bank accounts, on or about August 24, 2020, Defendant Ikkurty opened an account for Jafia, at Bank E in Portland, Oregon.  Between July 2021 and March 31, 2022, Defendant Ikkurty accepted at least $23,908,802 into the Bank D account.  During the Relevant Period, Defendant Ikkurty transferred over $6.5 million from the Jafia account to other accounts under the control of and for the benefit of the Defendants. Defendants Ikkurty and Jafia transferred $8,650,000 to the same off-shore entity.

## V.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS THEREUNDER

### COUNT I

### Violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1): Failure to Register as a CPO

51.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

52.     Section 1a(10) of the Act, 7 U.S.C. § 1a(10), defines the term "commodity pool" to mean "any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests, including any—(i) commodity for future delivery, security

12

futures product, or swap; (ii) agreement, contract, or transaction described in section 2(c)(2)(C)(i) or section 2(c)(2)(D)(i); (iii) commodity option authorized under section 4c; or (iv) leverage transaction authorized under section 19 [of the Act]."

53.     7 U.S.C. § 1a(11) defines a CPO as any person "engaged in a business that is of the nature of a commodity pool, investment trust, syndicate or similar form of enterprise and who, in connection therewith, solicits, accepts, or receives from others, funds, securities or property . . . for the purpose of trading in commodity interests."

54.     7 U.S.C. § 6m(1) makes it unlawful for any CPO, unless registered with the CFTC, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

55.     Defendants acted as a CPO, as defined by 17 C.F.R. § 1.3, by soliciting, accepting or receiving funds from others for the purpose of trading in commodity interests.

56.     Defendants violated 7 U.S.C. § 6m(1) by acting as a CPO without the benefit of registration with the Commission.

57.     Each use by Defendants of the mails or any means or instrumentality of interstate commerce in connection with their business as a CPO without being registered with the Commission, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of 7 U.S.C. § 6m(1).

## COUNT II

### Violations of Section 4o(1)(A)-(B), 7 U.S.C. § 6o(1)(A)-(B):  Fraud by a CPO

58.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

59.     7 U.S.C. § 6o(1)(A)-(B) makes it unlawful for any commodity pool operator or associated person of a commodity pool operator, "by use of the mails or any means or

13

instrumentality of interstate commerce, directly or indirectly" (A) "to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant" or (B) "to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant."

60.     Defendants, acting as a CPO or associated persons of a CPO, violated 7 U.S.C. § 6*o*(1)(A)-(B) during the Relevant Period by making misrepresentations and omissions of material fact to participants and prospective participants, including, among other things, misrepresenting the purpose of the pools, their historical performance and expected profits, and fee structure; and failing to disclose that they were misappropriating participant funds for personal benefit and that they used participant funds to pay other participants, in the manner of a Ponzi scheme, and that they were not registered with the CFTC as a CPO.

61.     Defendants also violated 7 U.S.C. § 6*o*(1)(A)-(B) during the Relevant Period by misappropriating participant funds for personal benefit, including transferring them to accounts under their control and using participant funds to pay other participants, in the manner of a Ponzi scheme.

62.     Each act of misrepresenting and omitting material information, including, but not limited to, those specifically alleged herein, and each act of misappropriation, constitutes a separate and distinct violation of 7 U.S.C. § 6*o*(1)(A)-(B).

## COUNT III

### Violations of Section 6(c)(1) of the Act and Regulation 180.1, 7 U.S.C. § 9(1), and 17 C.F.R. § 180.1(a):  Deceptive Scheme or Contrivances

63.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

64.     7 U.S.C. § 9(1) makes it unlawful "for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any . . . contract of sale of any commodity in interstate commerce . . . any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate."

65.     17 C.F.R. § 180.1(a) makes it "unlawful for any person, directly or indirectly, in connection with any . . . contract of sale of any commodity in interstate commerce . . . to intentionally or recklessly:  (1) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or misleading statement of material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; [or] (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person."

66.     Bitcoin and Ethereum are "commodities" under Section 1a(9) of the Act, 7 U.S.C. § 1a(9), and contracts for their sale are subject to the prohibitions of Section 6(c)(1) of the Act and Regulation 180.1.

67.     From at least January 2021 through the present, as described above, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a), by, among other things, in connection with contracts of sale of commodities in interstate commerce, making or attempting to make untrue or misleading statements of material fact or omitting to state or attempting to omit to state material facts necessary in order to make statements made not untrue or misleading, such as failing to disclose that they were misappropriating participant funds, making misrepresentations to their participants about their historical performance and fee structure; and failing to disclose to

participants that they used participant funds to pay other participants, in the manner of a Ponzi scheme.

68.     From at least January 2021 through the present, as described above, Defendants also violated 7 U.S.C. § 9(1) of the Act and 17 C.F.R. § 180.1(a) by, among other things, in connection with contracts of sale of commodities in interstate commerce, misappropriating participant funds to make distributions to other participants in a manner akin to a Ponzi scheme or transferring funds to accounts controlled by the Defendants.

69.     By the foregoing conduct, Defendants directly or indirectly used or employed or attempted to use or employ a manipulative or deceptive device or contrivance or manipulative device, scheme, or artifice to defraud participants and engaged in this conduct intentionally or recklessly.

70.     By the foregoing conduct, the Defendants directly or indirectly used or employed or attempted to use or employ a manipulative or deceptive device or contrivance or omitted to state material facts necessary in order to make their statements to participants not untrue or misleading, and engaged in such conduct intentionally or recklessly.

71.     By the foregoing conduct, the Defendants directly or indirectly used or employed or attempted to use or employ a manipulative or deceptive device or contrivance or engaged or attempted to engage in an act, practice, or course of business which operated or would operate as a fraud or deceit, and engaged in such conduct intentionally or recklessly.

72.     Each and every overt action in furtherance of the use or attempted use of a manipulative or deceptive device or contrivance is alleged herein as a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

## VI.    RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by

Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.    Find that the Defendants violated Sections 4o(1)(A) and (B), 4m(1), and 6(c)(1) of the

Act, 7 U.S.C. §§ 6o(1)(A)-(B), 6m(1), 9(1), and 17 C.F.R. § 180.1(a) (2021);

B.    Enter an order of permanent injunction enjoining the Defendants and their affiliates,

agents, servants, employees, successors, assigns, attorneys, and all persons or entities

in active concert with them, who receive actual notice of such order by personal

service or otherwise, from directly or indirectly engaging in the conduct described

above, in violation of 7 U.S.C. §§ 6o(1)(A)-(B), 6m(1), 9(1), and 17 C.F.R. § 180.1(a).

C.    Enter an order of permanent injunction enjoining the Defendants and their affiliates,

agents, servants, employees, successors, assigns, attorneys, and all persons or entities

in active concert with them, who receive actual notice of such order by personal

service or otherwise, from directly or indirectly:

a.    Trading on or subject to the rules of any registered entity (as that term is defined

by Section la(40) of the Act, 7 U.S.C. § la(40));

b.    Entering into any transactions involving "commodity interests" (as that term is

defined in Regulation 1.3, 17 C.F.R. § 1.3 (2021)) or digital assets, including

Bitcoin and Ethereum, for accounts held in the name of the Defendants or for

accounts in which the Defendants have a direct or indirect interest;

c.    Having any commodity interests or digital assets, including Bitcoin and

Ethereum, traded on the Defendants' behalf;

    d.   Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests or digital assets, including Bitcoin and Ethereum;

    e.   Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests or digital assets, including Bitcoin and Ethereum;

    f.   Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and

    g.   Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2021)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9).

D.   Enter an order directing the Defendants and Relief Defendants, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received, including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment and post-judgment interest;

E.   Enter an order requiring the Defendants, as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

F.     Enter an order directing the Defendants, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between, with, or among the Defendants and any of the participants whose funds were received by the Defendants as a result of the acts and practices that constituted violations of the Act, as described herein;

G.    Enter an order directing the Defendants to pay a civil monetary penalty assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599–600, see Regulation 143.8, 17 C.F.R. § 143.8 (2021), for each violation of the Act, as described herein;

H.    Enter an order requiring the Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2); and

I.     Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Dated:  May 10, 2022               Respectfully submitted,

ATTORNEYS FOR PLAINTIFF
COMMODITY FUTURES TRADING
COMMISSION
77 West Jackson Boulevard, Suite 800
Chicago, Illinois 60604
(312) 596-0714 facsimile
(312) 596-0700

*/s/ Candice Haan*
Candice Haan
Senior Trial Attorney
IL Bar No. 6315007

chaan@cftc.gov

David A. Terrell
Chief Trial Attorney
IL Bar No. 6196293
dterrell@cftc.gov