# EXHIBIT 1

# Declaration of Heather Dasso

## DECLARATION UNDER PENALTY OF PERJURY OF
## HEATHER N. DASSO PURSUANT TO 28 U.S.C § 1746

I, Heather N. Dasso, hereby declare as follows:

## BACKGROUND

1.      I am employed as a Senior Investigator by the Commodity Futures Trading Commission (the "Commission").

2.      My primary responsibilities include conducting investigations to determine whether there have been violations of the Commodity Exchange Act and Commission Regulations.  In connection with these responsibilities, I analyze bank records, documents related to trading, account opening documents, and customer records for digital assets, commodity futures, commodity options, swaps, and off-exchange foreign currency accounts; trace the flow of funds through bank, commodity futures, commodity options, digital asset and foreign currency trading accounts; review corporate formation documents filed with various state and federal agencies; and, review applicable registration information for entities and individuals in the U.S. futures and derivatives industry, among other activities.

3.      I have worked for the Commission since September 2009.  Prior to joining the Commission, I held the position of Senior Manager, Investigations at National Futures Association ("NFA[1]").  I have a Bachelor of Business Administration degree in Accounting from the University of Iowa and am a Certified Fraud Examiner.

## SCOPE OF INVESTIGATION

---

[1] NFA is the industry wide, self-regulatory organization for the U.S. futures industry.  NFA regulates every firm or individual who conducts futures trading business with public customers and performs investigations and audits of these firms and individuals to ensure compliance with NFA rules.

1

4.     From February 2022 to the present, I have participated in an investigation initiated by the Commission's Division of Enforcement (the "Division") involving Sam Ikkurty a/k/a Sreenivas I Rao ("Ikkurty"), Ravishankar Avadhanam ("Avadhanam"), Jafia, LLC ("Jafia") and together with Ikkurty and Avadhanam ("Defendants"), Ikkurty Capital, LLC a/k/a Rose City Income Fund I ("Ikkurty Capital"), Rose City Income Fund II LP ("Rose City") and Seneca Ventures, LLC ("Seneca") and together with Ikkurty Capital and Rose City ("Relief Defendants").

5.     I have personal knowledge of the facts set forth herein based on my participation in the investigation, including among other things, my review of documents obtained by the Division.  During the course of the investigation, among other things, I have:

- Obtained, reviewed and analyzed bank account records for multiple accounts in the name of the Defendants and Relief Defendants;
- Requested and reviewed NFA records certifications for Defendants and Relief Defendants;
- Completed various internet and computer database searches for information regarding Defendants and Relief Defendants;
- Reviewed a Limited Partnership Agreement for Rose City; and
- Reviewed websites, social medium platforms, You Tube videos and other public solicitations made by the Defendants and Relief Defendants.

## BACKGROUND INFORMATION

6.     Sam Ikkurty a/k/a Sreenivas I Rao resides in Portland, Oregon.  He has never been registered with the CFTC in any capacity.  *See* **Exhibit A**, NFA certifications of no registration for Ikkurty and Rao.

2

7.     Ravishankar Avadhanam resides in Aurora, Illinois. Avadhanam has never been registered with the Commission in any capacity. *See* **Exhibit B**, NFA certification of no registration for Avadhanam.

8.     Jafia, LLC is a Florida company that was established by Ikkurty in 2006. Ikkurty owns Jafia and is the sole officer, president, registered agent and authorized person for this entity. *See* **Exhibit C,** a copy of Jafia's Sunbiz report from the Florida Division of Corporations website. *See* **Exhibit D**, a copy of a Corporate Authorization Resolution for Jafia. Jafia has never been registered with the Commission in any capacity. *See* **Exhibit E**, NFA certification of no registration for Jafia.

9.     Ikkurty Capital LLC d/b/a Rose City Income Fund ("Ikkurty Capital") is a Florida corporation that was established in 2013. Ikkurty is the Managing Member and registered agent for Ikkurty Capital, and Jafia is the Manager. *See* **Exhibit F**, a copy of the 2022 Florida Limited Liability Company Annual Report as filed with the Secretary of State on February 22, 2022. *See* **Exhibit G,** a copy of a Limited Liability Company Authorization Resolution for Ikkurty Capital. Ikkurty Capital LLC has never been registered with the CFTC in any capacity. *See* **Exhibit H**, NFA certification of no registration for Ikkurty Capital.

10.    Rose City Income Fund II LP ("Rose City") is a Delaware entity that was established on December 10, 2020 with its principal place of business in Portland, Oregon. Ikkurty is the Principal, Officer and Managing Partner of Rose City. Jafia is the General Partner of Rose City. *See* **Exhibit I**, entity details from the Delaware Division of Corporations. *See* **Exhibit J**, account opening documentation for a business bank account

3

for Rose City.  Rose City has never been registered with the CFTC in any capacity.  *See* **Exhibit K**, NFA certification of no registration for Rose City.

11.  Seneca Ventures LLC is a Wyoming entity that was established on April 14, 2021.  Ikkurty and Avadhanam own Seneca Ventures. *See* **Exhibit L**, a copy of the LLC Articles of Organization.  *See* **Exhibit M**, a Beneficial Owner Certification Form for Seneca. Seneca Ventures has never been registered with the CFTC in any capacity. *See* **Exhibit N**, NFA certification of no registration for Seneca.

## SOLICITATIONS

### Website

12.  Based on my internet research, Defendants operated a website www.rosecityfund.com.  *See* **Exhibit O**, a copy of the website as captured on February 22, 2022.

13.  According to the website, the Rose City Income Fund I was born on October 1, 2017.  The website, among other things, states:

- "We are a monthly income fund.  We are suited for income-oriented investors who depend on a steady distribution."

- "We are pleased to announce to the partners that we have a 1-year return for the fund.  In a severe bear market that we are currently experiencing in digital currencies, our 1-year return is 61.78%."

- "Compounding is a powerful force in investing.  If we continue to provide the same annual returns (i.e. 61.78%) to investors, $100,000 will grow to

4

$1.1 million in 5 years, $12.28 million in 10 years and $136.1 million in 15 years."

- "Since we have started small, I feel we have a long runway to achieve growth as digital currency market evolves."

- "Our primary goal is to deliver a steady income of 15% per year paid out on a monthly basis."

- "Our number one goal is to provide a steady 15% per year in distribution, payable monthly".

- "Our goal is to provide a steady income to our investors, while providing the upside to the crypto markets."

- "We want to achieve this by investing 70% of the fund's assets into proof-of-stake mining coins, using market-neutral strategies while having 30% of the fund is exposed to Crypto assets like Bitcoin, Ethereum and other diversified crypto assets."

- "Bitcoin is a great hedge against central banks. Bitcoin has a fixed supply of 21 million coins where as fiat money can be indefinitely printed, infinitely diluting the purchasing power of money. After the emergence of COVID-19 central banks all around the world have been printing trillions of dollars, devaluing currencies. Our portfolio is ideally suited to hedge against money printing."

## Limited Partnership Agreement

14.     During the course of the investigation, I obtained and reviewed a Limited Partnership Agreement ("Agreement") for Rose City. The Agreement identifies Jafia as the

"General Partner" to the Agreement and all the participants of the Agreement as "Limited Partners".

15.     The Agreement was signed by a Limited Partner with the initials P.R. on February 1, 2021. Ikkurty signed the Agreement as the managing partner of Jafia. *See* **Exhibit P**, a copy of the Limited Partnership Agreement.

16.     According to Section 1.03 of the Agreement, "the purpose of the partnership is to serve as a fund through which the assets of its Partners will be utilized to invest, hold and trade in digital currencies, cryptoassets, cryptocurrencies, decentralized application tokens and protocol tokens, blockchain based assets and other cryptofinance and digital assets that currently exist, or may exist in the futures (collectively, "Digital Assets"), and other financial instruments of any name and nature which exist now or are hereafter created and rights and options relating thereto."

17.     According to Section 3.02, Powers of the General Partner, the General Partner maintains, in relevant part, the following powers:

> (a) To purchase, hold, sell, sell short, cover and otherwise deal in Digital Assets and financial instruments of any sort and rights therein, including restricted and privately issued instruments, on margin or otherwise;
>
> (b) To loan its Digital Assets to other market participants and engage in "staking" of Digital Assets;
>
> (c) Write, purchase, hold, sell and otherwise deal in put and call options of any sort and in any combination thereof;

(d) To purchase, hold, sell, sell short and otherwise deal in commodities, commodity contracts, commodity futures, financial futures (including index futures) and options in respect thereof;

(e) To purchase, hold, sell, sell short and otherwise deal in currencies, options thereon and rights therein, including forward foreign currency exchange contracts;

(f) To purchase, hold, sell and otherwise deal in derivatives, swap contracts, partnership interest, interests in other investment companies or any other financial instruments which exist now or are hereafter created; and

(g) To conduct margin accounts with brokers . . .

18. According to Section 4.04 of the Agreement, "the partnership shall pay to the General Partner a monthly management fee calculated at an annual rate of 2.0% of each Capital Account (collectively, the "Management Fee"). The Management Fee shall be paid monthly in advance based on the value of each Limited Partner's Capital Account as of the first "Business Day" of each calendar month, adjusted for contributions and withdrawals made during the month and calculated without accrual of the Incentive Allocation. (For the purposes of this Agreement, a "Business Day" shall mean any day on which banks are open in New York.) The General Partner, in its sole discretion, may waive or modify the Management Fee for Limited Partners that are members, employees or affiliates of the General Partner, relatives of such person and for certain large or strategic investors."

## You Tube Video

19.     During the of the investigation, I watched a video posted on You Tube that showed Defendants soliciting to prospective participants. The video was captured on April 26, 2022. *See* **Exhibit Q**, the homepage of the web capture.  The video made the following representations:

- "Rule 1: Pay 18% per year interest on our Crypto Savings Note on a monthly basis."

- "We offer a promissory note enforceable by law in the USA that pays 18% interest per year and returns the original principal at the end of 18 months. This is backed by the full faith and credit of Jafia LLC."

- Rose City's "proven track record of generating a 48% yield" and then assures participants that Rose City "makes sure that the money you start with will not be lost."

## BANK ACCOUNTS

### Bank A

20.     On April 15, 2021, Avadhanam opened a business checking account at PNC Bank in the name of Seneca Ventures LLC.  Avadhanam was the only signer on the account. *See* **Exhibit R**, a copy of the PNC Bank account application.

21.     I obtained and reviewed the bank records received from PNC Bank including monthly account statements and supporting documentation. *See* **Exhibit S**, a copy of the PNC bank records.

22.     Between April 15, 2021 and June 4, 2021, the account had deposits totaling $1,707,000 from 24 participants. Among other things, participants included the following notes on their deposit memos: "investment," "investment Rose City," "Rose City Fund II," and ATTN: Ravishankar Avadhanam, Sam."

23.     Between April 15, 2021 and June 4, 2021, two deposits were made by Defendants Ikkurty and Avadhanam totaling $36,666 into the account. No other deposits were made into the account other than funds deposited from participants and Defendants Ikkurty and Avadhanam.

24.     Between April 15, 2021 and June 4, 2021, $1,686,829 was transferred to Rose City in the form of wire transfers and Cashier's Checks made payable to "Rose City Income Fund II."

25.     Seneca's account at PNC Bank was closed in June 2021.

### Bank B

26.     On June 14, 2021, Defendants Ikkurty and Avadhanam opened a business checking account at JP Morgan Chase Bank ("JPMC") in the name of Seneca Ventures LLC. In the account application materials, Defendants Ikkurty and Avadhanam describe Seneca Ventures as a "technology consulting firm in software programming." Defendants Ikkurty and Avadhanam were the authorized signers on the account. *See* **Exhibit T**, a copy of the account opening documentation for the JPMC account.

27.     I obtained and reviewed the bank records received from JPMC including monthly account statements and supporting documentation. *See* **Exhibit U**, a copy of the JPMC bank records.

28.     Between June 14, 2021 and January 26, 2022, at least 122 participants deposited at least $10,400,000 into the JPMC account.  Among other things, participants included the following notes on their wire transaction deposits: "investment," "initial investment" and "additional investment."

29.     During this same time period, the only other source of funds into the Seneca JPMC account was transfers from other bank accounts in the name of Rose City Fund II LP.

30.     Between June 14, 2021 and January 26, 2022, Defendants Ikkurty and Avadhanam sent $9,916,333 to an account in the name of Rose City Income Fund II LP. Defendants Ikkurty and Avadhanam also sent a total of $543,428 from the JPMC account to another bank account in the name of Seneca Ventures.  One wire transfer of $25,000 was sent to a participant.

31.     Seneca's account at JPMC was closed in January 2022.

### Bank C

32.     On December 9, 2021, Defendants Ikkurty and Avadhanam opened an account at Evolve Bank and Trust in the name of Seneca Ventures LLC.  *See* **Exhibit V**, account opening paperwork for the Seneca account provided by Evolve Bank and Trust.

33.     Between December 22, 2021 and March 31, 2022 deposits totaling $5,654,081 were made into this account.  Activity in the account appears to be consistent with activity in the Seneca bank accounts at PNC Bank and JPMC – funds are deposited by participants and also from accounts owned and/or controlled by Defendants and Relief Defendants and funds are distributed to participants and to accounts owned and/or controlled by Defendants and Relief Defendants.  *See* **Exhibit W**, monthly bank statements for Seneca's account at Evolve Bank and Trust

34.     As of March 31, 2022, Seneca's account at Evolve Bank and Trust had a balance of $112,918.10.

### Bank D

35.     On May 18, 2021, Defendant Ikkurty opened a business bank account in the name of Rose City Income Fund II LP at Silvergate Bank.  In the account opening documentation, Defendant Ikkurty described that the purpose of the account is "trading" and the anticipated account activity was "Funds In/Out from Operating Account (LP Subscriptions)/ wires to/from exchanges (Coinbase Pro) to buy crypto assets."  Defendant Ikkurty further described the types of transactions as "[f]unds in from selling limited partnership interests . . ."  Defendant Ikkurty is the only Principal/Officer and authorized signer on the account.  *See* **Exhibit X**, account opening documentation from the Silvergate Bank account.

36.     I obtained and reviewed the bank records received from Silvergate including monthly account statements and supporting documentation.  *See* **Exhibit Y**, a copy of the Silvergate bank records.

37.     Between May 18, 2021 and March 31, 2022, at least 78 participants deposited at least $32,307,846 into the Rose City account at Silvergate.

38.     During the same period, Seneca deposited $10,621,162 from the PNC and JPMC accounts into the Rose City account at Silvergate.

39.     Between May 18, 2021 and March 31, 2022, Defendant Ikkurty transferred money out of the Rose City account to other accounts controlled by Defendants and Relief Defendants.  Specifically, $23,908,892 was transferred to an account in the name of Defendant Jafia and $860,502 was transferred to the Seneca Ventures account at JPMC.

40.     During the same period, $9,200,000 was sent to Genie Technologies Pte Ltd ("Genie"). No deposits ever came into the account from Genie.

41.     My internet research shows that Genie is a Private Company Limited by Shares, incorporated in Singapore. It represents that its principal activity is "other information technology and computer service activities (eg disaster recovery services)." *See* **Exhibit Z**, a copy of the referenced internet report on Genie.

42.     Further internet research shows Genie is affiliated with Zebpay.com ("ZebPay"), an overseas cryptocurrency exchange. Specifically, the Legal and Privacy page on ZebPay's website states that "Zebpay shall mean and include Genie Technologies Pte Ltd [Registration No: 201919382H]…where a customer accesses the ZebPay's Platform in or from supported countries." United States is not listed as supported country. *See* **Exhibit AA**, a copy of the Legal and Privacy page from www.zebpay.com.

43.     Between May 18, 2021 and March 31, 2022, approximately $5,846,720 in the Rose City account was distributed to participants.

44.     My review of the Silvergate records shows that Defendant Ikkurty distributed to participants the 15% annual return on their investment, paid monthly, as described in Defendants' solicitations. For example:

- Customer with the initials A.B. deposited $300,000 into Rose City's account at Silvergate on September 30, 201. Subsequently, Customer A.B. received their promised annual return on investment of 15%, paid monthly. Specifically, Customer A.B. received disbursements of $3,750 on November 16, 2021, December 14, 2021, January 20, 2022, February 7, 2022 and March 22, 2022.

- Customer with the initials R.M. deposited $500,000 into Rose City's account at Silvergate on October 22, 2021. Subsequently, Customer R.M. received their promised annual return on investment of 15%, paid monthly. Specifically, Customer R.M. received disbursements of $6,250 on December 14, 2021, January 20, 2022, February 7, 2022 and March 22, 2022.

45. The only deposits into the Rose City Silvergate account came from participants' funds and from other accounts in the name of the Defendants and Relief Defendants that accepted participant funds. Therefore, distributions to participants came from those deposits.

46. As of March 31, 2022, the Rose City account at Silvergate had a balance of $3,916,385.44.

### Bank E

47. On August 24, 2020, Defendant Ikkurty opened an account in the name of Jafia, LLC at Umpqua Bank. Ikkurty was the sole signatory on the account. *See* **Exhibit BB**, a copy of the signature card for the bank account at Umpqua Bank.

48. I obtained and reviewed the bank records received from Umpqua Bank including monthly account statements and supporting documentation. *See* **Exhibit CC**, a copy of the Umpqua bank records.

49. Between July 2021 and March 31, 2022, $23,908,802 was deposited into Jafia's bank account from Rose City's account at Silvergate.

50. Between May 2021 and March 31, 2022, Defendant Ikkurty transferred $6,650,000 to the accounts in the name of Defendants and Relief Defendants. Specifically, Defendant Ikkurty transferred $5,650,000 to a bank account in the name of Ikkurty Capital and $1,000,000 to another bank account in the name of Jafia.

51.    Between September 2021 and March 31, 2022, Defendant Ikkurty transferred
$8,650,000 to Genie from Jafia's account at Umpqua Bank.

52.    As of March 31, 2022, Jafia's account at Umpqua Bank had a balance of
$3,360,019.25.

I declare under penalty of perjury that the foregoing is true and correct to the best of my
knowledge.

_____

Heather N. Dasso

Executed on this 9th day of May, 2022, in Chicago, Illinois.

14

# EXHIBIT A



**CERTIFICATION**

With respect to: Sam Ikkurty

1.  I, Sandra A. Jung, am employed by National Futures Association ("NFA") as Document Research Supervisor. I also have served as Deputy Record Custodian since May 6, 1996. NFA is a futures association registered with the U.S. Commodity Futures Trading Commission ("CFTC") under Section 17 of the Commodity Exchange Act ("Act"). 7 U.S.C. § 21 (2006).

2.  Under Sections 4f, 4k, 4n, 8a and 19 of the Act, the CFTC is authorized to collect and maintain registration records for each category of registration under the Act. 7 U.S.C. §§ 6f, 6k, 6n, 12a and 23 (2006). Under Sections 8a(10) and 17o of the Act, 7 U.S.C. §§ 12a(10) and 21o (2006), the CFTC has delegated to NFA the responsibility and authority to process and act as custodian of the official CFTC registration records for all categories of registration under the Act.

3.  Pursuant to the CFTC's delegation of responsibility and authority, NFA receives, processes, stores and records all official CFTC registration records in the normal, ordinary and regular course of NFA's business. NFA has adopted Registration Rules, which the CFTC has reviewed and approved, governing access to and certification of the official CFTC registration records.

4.  As Deputy Record Custodian, I am responsible for NFA's receipt, processing, storage and recording of all official CFTC registration records. As such, I am familiar with these records and the system that NFA uses to maintain these records.

5.  In accordance with Rules 803(6), 803(7), and 902(11) of the Federal Rules of Evidence, CFTC registration records: (1) are regularly kept for persons and entities registered with the CFTC; (2) are made at or near the time by, or from information transmitted by, a person with knowledge of those records; (3) are kept in the course of a regularly conducted business activity; and (4) are made as a regular practice in the course of regularly conducted business activity.

- 2 -

6.    Under my supervision, I have caused to be conducted a review of these official CFTC records from July 1982 to the present, which disclosed the following information:

> There is no record of a registration, an application for registration, or an exemption from registration in any capacity for Sam Ikkurty.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date:  March 30, 2022

*Sandra A. Jung*

Deputy Record Custodian

National Futures Association
300 South Riverside Plaza
Suite 1800
Chicago, Illinois  60606



## CERTIFICATION

With respect to: Sreenivas Rao

1.   I, Sandra A. Jung, am employed by National Futures Association ("NFA") as Document Research Supervisor. I also have served as Deputy Record Custodian since May 6, 1996. NFA is a futures association registered with the U.S. Commodity Futures Trading Commission ("CFTC") under Section 17 of the Commodity Exchange Act ("Act"). 7 U.S.C. § 21 (2006).

2.   Under Sections 4f, 4k, 4n, 8a and 19 of the Act, the CFTC is authorized to collect and maintain registration records for each category of registration under the Act. 7 U.S.C. §§ 6f, 6k, 6n, 12a and 23 (2006). Under Sections 8a(10) and 17o of the Act, 7 U.S.C. §§ 12a(10) and 21o (2006), the CFTC has delegated to NFA the responsibility and authority to process and act as custodian of the official CFTC registration records for all categories of registration under the Act.

3.   Pursuant to the CFTC's delegation of responsibility and authority, NFA receives, processes, stores and records all official CFTC registration records in the normal, ordinary and regular course of NFA's business. NFA has adopted Registration Rules, which the CFTC has reviewed and approved, governing access to and certification of the official CFTC registration records.

4.   As Deputy Record Custodian, I am responsible for NFA's receipt, processing, storage and recording of all official CFTC registration records. As such, I am familiar with these records and the system that NFA uses to maintain these records.

5.   In accordance with Rules 803(6), 803(7), and 902(11) of the Federal Rules of Evidence, CFTC registration records: (1) are regularly kept for persons and entities registered with the CFTC; (2) are made at or near the time by, or from information transmitted by, a person with knowledge of those records; (3) are kept in the course of a regularly conducted business activity; and (4) are made as a regular practice in the course of regularly conducted business activity.

- 2 -

6.    Under my supervision, I have caused to be conducted a review of these official CFTC records from July 1982 to the present, which disclosed the following information:

> There is no record of a registration, an application for registration, or an exemption from registration in any capacity for Sreenivas Rao.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: March 30, 2022

*Sandra A. Jung*

Deputy Record Custodian

National Futures Association
300 South Riverside Plaza
Suite 1800
Chicago, Illinois 60606

# EXHIBIT B



**CERTIFICATION**

With respect to: Ravishankar Avadhanam

1.  I, Sandra A. Jung, am employed by National Futures Association ("NFA") as Document Research Supervisor. I also have served as Deputy Record Custodian since May 6, 1996. NFA is a futures association registered with the U.S. Commodity Futures Trading Commission ("CFTC") under Section 17 of the Commodity Exchange Act ("Act"). 7 U.S.C. § 21 (2006).

2.  Under Sections 4f, 4k, 4n, 8a and 19 of the Act, the CFTC is authorized to collect and maintain registration records for each category of registration under the Act. 7 U.S.C. §§ 6f, 6k, 6n, 12a and 23 (2006). Under Sections 8a(10) and 17o of the Act, 7 U.S.C. §§ 12a(10) and 21o (2006), the CFTC has delegated to NFA the responsibility and authority to process and act as custodian of the official CFTC registration records for all categories of registration under the Act.

3.  Pursuant to the CFTC's delegation of responsibility and authority, NFA receives, processes, stores and records all official CFTC registration records in the normal, ordinary and regular course of NFA's business. NFA has adopted Registration Rules, which the CFTC has reviewed and approved, governing access to and certification of the official CFTC registration records.

4.  As Deputy Record Custodian, I am responsible for NFA's receipt, processing, storage and recording of all official CFTC registration records. As such, I am familiar with these records and the system that NFA uses to maintain these records.

5.  In accordance with Rules 803(6), 803(7), and 902(11) of the Federal Rules of Evidence, CFTC registration records: (1) are regularly kept for persons and entities registered with the CFTC; (2) are made at or near the time by, or from information transmitted by, a person with knowledge of those records; (3) are kept in the course of a regularly conducted business activity; and (4) are made as a regular practice in the course of regularly conducted business activity.

- 2 -

6.  Under my supervision, I have caused to be conducted a review of these official CFTC records from July 1982 to the present, which disclosed the following information:

>   There is no record of a registration, an application for registration, or an exemption from registration in any capacity for Ravishankar Avadhanam.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date:  March 30, 2022

*Sandra A. Jung*
Deputy Record Custodian

National Futures Association
300 South Riverside Plaza
Suite 1800
Chicago, Illinois  60606

# EXHIBIT C

DIVISION OF CORPORATIONS



## Detail by Entity Name

Florida Limited Liability Company
JAFIA, LLC

**Filing Information**

| | |
|---|---|
| **Document Number** | L06000045016 |
| **FEI/EIN Number** | 20-4796929 |
| **Date Filed** | 05/01/2006 |
| **Effective Date** | 04/28/2006 |
| **State** | FL |
| **Status** | ACTIVE |

**Principal Address**

7028 WEST WATERS AVENUE SUITE 145
TAMPA, FL 33634

Changed: 01/24/2011

**Mailing Address**

7028 WEST WATERS AVENUE SUITE 145
TAMPA, FL 33634

Changed: 01/24/2011

**Registered Agent Name & Address**

IKKURTY, SAM
7028 WEST WATERS AVENUE SUITE 145
TAMPA, FL 33634

Name Changed: 01/24/2011

Address Changed: 01/24/2011

**Authorized Person(s) Detail**

**Name & Address**

Title MR

IKKURTY, SAM MANAGER
7028 WEST WATERS AVE SUITE 145
TAMPA, FL 33634

**Annual Reports**

| Report Year | Filed Date |
|-------------|------------|
| 2020        | 07/06/2020 |
| 2021        | 01/28/2021 |
| 2022        | 02/22/2022 |

**Document Images**

| | |
|---|---|
| 02/22/2022 -- ANNUAL REPORT | View image in PDF format |
| 01/28/2021 -- ANNUAL REPORT | View image in PDF format |
| 07/06/2020 -- ANNUAL REPORT | View image in PDF format |
| 04/03/2019 -- ANNUAL REPORT | View image in PDF format |
| 01/31/2018 -- ANNUAL REPORT | View image in PDF format |
| 02/15/2017 -- ANNUAL REPORT | View image in PDF format |
| 03/08/2016 -- ANNUAL REPORT | View image in PDF format |
| 01/09/2015 -- ANNUAL REPORT | View image in PDF format |
| 01/08/2014 -- ANNUAL REPORT | View image in PDF format |
| 03/21/2013 -- ANNUAL REPORT | View image in PDF format |
| 01/30/2012 -- ANNUAL REPORT | View image in PDF format |
| 01/24/2011 -- ANNUAL REPORT | View image in PDF format |
| 01/05/2010 -- ANNUAL REPORT | View image in PDF format |
| 01/14/2009 -- ANNUAL REPORT | View image in PDF format |
| 02/01/2008 -- ANNUAL REPORT | View image in PDF format |
| 01/03/2007 -- ANNUAL REPORT | View image in PDF format |
| 05/01/2006 -- Florida Limited Liability | View image in PDF format |

# EXHIBIT D

# Corporate Authorization Resolution

Umpqua Bank
2870 NE Town Center Drive
Hillsboro, OR 97006

**By:** Jafia, LLC
7028 W Waters Ave Suite 145
Tampa, FL 33634

---

*Referred to in this document as "Financial Institution"*          *Referred to in this document as "Corporation"*

---

I, Sam Ikkurty                                  , certify that I am Secretary (clerk) of the above named corporation
organized under the laws of Florida                                  , Federal Employer I.D. Number
20-4796929              , engaged in business under the trade name of Jafia, LLC
, and that the resolutions on this document are a correct copy of the resolutions adopted at a
meeting of the Board of Directors of the Corporation duly and properly called and held on          08/24/2020
(*date*). These resolutions appear in the minutes of this meeting and have not been rescinded or modified.

**Agents.** Any Agent listed below, subject to any written limitations, is authorized to exercise the powers granted as
indicated below:

| Name and Title or Position | Signature | Facsimile Signature<br>*(if used)* |
|---|---|---|
| Sam Ikkurty  President/Secretary | | |
| A._____ | X *Sam Ikkurty* (eSigned By: — Aug 24, 2020 1:41:13 PM PDT) | X_____ |
| B._____ | X_____ | X_____ |
| C._____ | X_____ | X_____ |
| D._____ | X_____ | X_____ |
| E._____ | X_____ | X_____ |
| F._____ | X_____ | X_____ |

Corporation Authorization
© 2018 Wolters Kluwer Financial Services, Inc.
All rights reserved. EORCA12

**Powers Granted.** (Attach one or more Agents to each power by placing the letter corresponding to their name in the area before each power. Following each power indicate the number of Agent signatures required to exercise the power.)

| Indicate A, B, C, D, E, and/or F | | Description of Power | Indicate number of signatures required |
|---|---|---|---|
| _____ | (1) | Exercise all of the powers listed in this resolution. | XXX_____ |
| A_____ | (2) | Open any deposit or share account(s) in the name of the Corporation. | 1_____ |
| A_____ | (3) | Endorse checks and orders for the payment of money or otherwise withdraw or transfer funds on deposit with this Financial Institution. | 1_____ |
| _____ | (4) | Borrow money on behalf and in the name of the Corporation, sign, execute and deliver promissory notes or other evidences of indebtedness. | XXX_____ |
| _____ | (5) | Endorse, assign, transfer, mortgage or pledge bills receivable, warehouse receipts, bills of lading, stocks, bonds, real estate or other property now owned or hereafter owned or acquired by the Corporation as security for sums borrowed, and to discount the same, unconditionally guarantee payment of all bills received, negotiated or discounted and to waive demand, presentment, protest, notice of protest and notice of non-payment. | XXX_____ |
| A_____ | (6) | Enter into a written lease for the purpose of renting, maintaining, accessing and terminating a Safe Deposit Box in this Financial Institution. | 1_____ |
| _____ | (7) | Other: | XXX_____ |

**Limitations on Powers.** The following are the Corporation's express limitations on the powers granted under this resolution.
XXX

**Resolutions**

**The Corporation named on this resolution resolves that,**

(1)  The Financial Institution is designated as a depository for the funds of the Corporation and to provide other financial accommodations indicated in this resolution.

(2)  This resolution shall continue to have effect until express written notice of its rescission or modification has been received and recorded by the Financial Institution. Any and all prior resolutions adopted by the Board of Directors of the Corporation and certified to the Financial Institution as governing the operation of this corporation's account(s), are in full force and effect, until the Financial Institution receives and acknowledges an express written notice of its revocation, modification or replacement. Any revocation, modification or replacement of a resolution must be accompanied by documentation, satisfactory to the Financial Institution, establishing the authority for the changes.

(3)  The signature of an Agent on this resolution is conclusive evidence of their authority to act on behalf of the Corporation. Any Agent, so long as they act in a representative capacity as an Agent of the Corporation, is authorized to make any and all other contracts, agreements, stipulations and orders which they may deem advisable for the effective exercise of the powers indicated in this resolution, from time to time with the Financial Institution, subject to any restrictions on this resolution or otherwise agreed to in writing.

(4)  All transactions, if any, with respect to any deposits, withdrawals, rediscounts and borrowings by or on behalf of the Corporation with the Financial Institution prior to the adoption of this resolution are hereby ratified, approved and confirmed.

Corporation Authorization
© 2018 Wolters Kluwer Financial Services, Inc.
All rights reserved. EORCA12

CA-1 7/1/2018
(1807).01
Page 2 of 3

(5)   The Corporation agrees to the terms and conditions of any account agreement, properly opened by any Agent of the Corporation. The Corporation authorizes the Financial Institution, at any time, to charge the Corporation for all checks, drafts, or other orders, for the payment of money, that are drawn on the Financial Institution, so long as they contain the required number of signatures for this purpose.

(6)   The Corporation acknowledges and agrees that the Financial Institution may furnish at its discretion automated access devices to Agents of the Corporation to facilitate those powers authorized by this resolution or other resolutions in effect at the time of issuance. The term "automated access device" includes, but is not limited to, credit cards, automated teller machines (ATM), and debit cards.

(7)   The Corporation acknowledges and agrees that the Financial Institution may rely on alternative signature and verification codes issued to or obtained from the Agent named on this resolution. The term "alternative signature and verification codes" includes, but is not limited to, facsimile signatures on file with the Financial Institution, personal identification numbers (PIN), and digital signatures. If a facsimile signature specimen has been provided on this resolution, (or that are filed separately by the Corporation with the Financial Institution from time to time) the Financial Institution is authorized to treat the facsimile signature as the signature of the Agent(s) regardless of by whom or by what means the facsimile signature may have been affixed so long as it resembles the facsimile signature specimen on file. The Corporation authorizes each Agent to have custody of the Corporation's private key used to create a digital signature and to request issuance of a certificate listing the corresponding public key. The Financial Institution shall have no responsibility or liability for unauthorized use of alternative signature and verification codes unless otherwise agreed in writing.

(8)   The Corporation acknowledges that the Financial Institution does not allow any account to have dual or multiple signature requirements and the Corporation waives any requirement that the Financial Institution not process items without more than one signature.

**Effect on Previous Resolutions.**  This resolution supersedes resolution dated                            . If not completed, all resolutions remain in effect.

**Certification of Authority**
I further certify that the Board of Directors of the Corporation has, and at the time of adoption of this resolution had, full power and lawful authority to adopt the resolutions stated above and to confer the powers granted above to the persons named who have full power and lawful authority to exercise the same. (Apply seal below where appropriate.)

☐ If checked, the Corporation is a non-profit corporation.
In Witness Whereof, I have subscribed my name to this document and affixed the seal of the Corporation on
                                    *(date)*.

eSigned By:
*Sam Ikkurty*
Aug 24, 2020 1:41:13 PM PDT

*Secretary*                                              *Attest by One Other Officer*
Sam Ikkurty

☒ Sole Officer, acting alone, has the authority to represent, sign for, and bind the corporation.
   Officer Initials *SI* .

---

**For Financial Institution Use Only**
Acknowledged and received on                        *(date)* by _____ *(initials)*

**Comments:**

---

Corporation Authorization
© 2018 Wolters Kluwer Financial Services, Inc.
All rights reserved. Custom EORCA12

CA-1 7/1/2018
(1807).01
Page 3 of 3

# EXHIBIT E



## CERTIFICATION

With respect to: Jafia LLC

1.  I, Sandra A. Jung, am employed by National Futures Association ("NFA") as Document Research Supervisor. I also have served as Deputy Record Custodian since May 6, 1996. NFA is a futures association registered with the U.S. Commodity Futures Trading Commission ("CFTC") under Section 17 of the Commodity Exchange Act ("Act"). 7 U.S.C. § 21 (2006).

2.  Under Sections 4f, 4k, 4n, 8a and 19 of the Act, the CFTC is authorized to collect and maintain registration records for each category of registration under the Act. 7 U.S.C. §§ 6f, 6k, 6n, 12a and 23 (2006). Under Sections 8a(10) and 17o of the Act, 7 U.S.C. §§ 12a(10) and 21o (2006), the CFTC has delegated to NFA the responsibility and authority to process and act as custodian of the official CFTC registration records for all categories of registration under the Act.

3.  Pursuant to the CFTC's delegation of responsibility and authority, NFA receives, processes, stores and records all official CFTC registration records in the normal, ordinary and regular course of NFA's business. NFA has adopted Registration Rules, which the CFTC has reviewed and approved, governing access to and certification of the official CFTC registration records.

4.  As Deputy Record Custodian, I am responsible for NFA's receipt, processing, storage and recording of all official CFTC registration records. As such, I am familiar with these records and the system that NFA uses to maintain these records.

5.  In accordance with Rules 803(6), 803(7), and 902(11) of the Federal Rules of Evidence, CFTC registration records: (1) are regularly kept for persons and entities registered with the CFTC; (2) are made at or near the time by, or from information transmitted by, a person with knowledge of those records; (3) are kept in the course of a regularly conducted business activity; and (4) are made as a regular practice in the course of regularly conducted business activity.

- 2 -

6.    Under my supervision, I have caused to be conducted a review of these official CFTC records from July 1982 to the present, which disclosed the following information:

        There is no record of a registration, an application for registration, or an exemption from registration in any capacity for Jafia LLC.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: March 30, 2022

*Sandra A. Jung*

Deputy Record Custodian

National Futures Association
300 South Riverside Plaza
Suite 1800
Chicago, Illinois 60606

# EXHIBIT F

## 2022 FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# L13000042992

**Entity Name:** IKKURTY CAPITAL LLC

**FILED**
**Feb 22, 2022**
**Secretary of State**
**0462930849CC**

**Current Principal Place of Business:**

7028 WEST WATERS AV APT 145
TAMPA, FL 33634

**Current Mailing Address:**

7028 WEST WATERS AV APT 145
TAMPA, FL 33634

**FEI Number:** 46-2593424                                   **Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

IKKURTY, SAM
7028 WEST WATERS AV APT 145
TAMPA, FL 33634 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: __SAM IKKURTY_____     02/22/2022
             Electronic Signature of Registered Agent                                                                Date

**Authorized Person(s) Detail :**

| | |
|---|---|
| Title | MGR |
| Name | JAFIA LLC |
| Address | 7028 WEST WATERS AV APT 145 |
| City-State-Zip: | TAMPA FL 33634 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: SAM IKKURTY                                        GENERAL PARTNER            02/22/2022
          Electronic Signature of Signing Authorized Person(s) Detail                                            Date

# EXHIBIT G

# Limited Liability Company Authorization Resolution

| | |
|---|---|
| Umpqua Bank<br>2870 NE Town Center Drive<br>Hillsboro, OR 97006 | **By:** Ikkurty Capital LLC<br>7028 W Waters Ave Apt 145<br>Tampa, FL 33634 |
| *Referred to in this document as "Financial Institution"* | *Referred to in this document as<br>"Limited Liability Company"* |

I, Sam Ikkurty                                        , certify that I am a Manager or Designated Member of the above named Limited Liability Company organized under the laws of Florida                                                                                          ,
Federal Employer I.D. Number 46-2593424                        , engaged in business under the trade name of
Ikkurty Capital LLC                                        , and that the resolutions on this document are a correct copy of the resolutions adopted at a meeting of all members of the Limited Liability Company or the person or persons designated by the members of the Limited Liability Company to manage the Limited Liability Company as provided in the articles of organization or an operating agreement, duly and properly called and held on        08/21/2020
(*date*). These resolutions appear in the minutes of this meeting and have not been rescinded or modified.

**Agents.** Any Agent listed below, subject to any written limitations, is authorized to exercise the powers granted as indicated below:

| Name and Title or Position | Signature | Facsimile Signature<br>*(if used)* |
|---|---|---|
| Sam Ikkurty  Managing member | | |
| A._____ | X _Sam Ikkurty_<br>eSigned By:<br>Aug 21, 2020 3:49:33 PM PDT | X_____ |
| B._____ | X_____ | X_____ |
| C._____ | X_____ | X_____ |
| D._____ | X_____ | X_____ |
| E._____ | X_____ | X_____ |
| F._____ | X_____ | X_____ |

**Powers Granted.** (Attach one or more Agents to each power by placing the letter corresponding to their name in the area before each power. Following each power indicate the number of Agent signatures required to exercise the power.)

| Indicate A, B, C, D, E, and/or F | | Description of Power | Indicate number of signatures required |
|---|---|---|---|
| _____ | (1) | Exercise all of the powers listed in this resolution. | XXX _____ |
| A _____ | (2) | Open any deposit or share account(s) in the name of the Limited Liability Company. | 1 _____ |
| A _____ | (3) | Endorse checks and orders for the payment of money or otherwise withdraw or transfer funds on deposit with this Financial Institution. | 1 _____ |
| _____ | (4) | Borrow money on behalf and in the name of the Limited Liability Company, sign, execute and deliver promissory notes or other evidences of indebtedness. | XXX _____ |
| _____ | (5) | Endorse, assign, transfer, mortgage or pledge bills receivable, warehouse receipts, bills of lading, stocks, bonds, real estate or other property now owned or hereafter owned or acquired by the Limited Liability Company as security for sums borrowed, and to discount the same, unconditionally guarantee payment of all bills received, negotiated or discounted and to waive demand, presentment, protest, notice of protest and notice of non-payment. | XXX _____ |
| A _____ | (6) | Enter into a written lease for the purpose of renting, maintaining, accessing and terminating a Safe Deposit Box in this Financial Institution. | 1 _____ |
| _____ | (7) | Other: | XXX _____ |

**Limitations on Powers.** The following are the Limited Liability Company's express limitations on the powers granted under this resolution.
XXX

## Resolutions

As used in this resolution, the term "Manager" means the person or persons designated by the members of the Limited Liability Company in a manager-managed Limited Liability Company to manage the Limited Liability Company as provided in the articles of organization or an operating agreement. The term "Designated Member" means the member or members of the Limited Liability Company authorized to act on behalf of the Limited Liability Company in a member-managed Limited Liability Company.

**The Limited Liability Company named on this resolution resolves that,**

(1) The Financial Institution is designated as a depository for the funds of the Limited Liability Company and to provide other financial accommodations indicated in this resolution.

(2) This resolution shall continue to have effect until express written notice of its rescission or modification has been received and recorded by the Financial Institution. Any and all prior resolutions adopted by the Managers or Designated Members of the Limited Liability Company and certified to the Financial Institution as governing the operation of this Limited Liability Company's account(s), are in full force and effect, until the Financial

Limited Liability Company Authorization Resolution
© 2018 Wolters Kluwer Financial Services, Inc.
All rights reserved. Custom EORLLC12

LLC-1 9/1/2018
(1809).00
Page 2 of 4

Institution receives and acknowledges an express written notice of its revocation, modification or replacement. Any revocation, modification or replacement of a resolution must be accompanied by documentation, satisfactory to the Financial Institution, establishing the authority for the changes.

(3) The signature of an Agent on this resolution is conclusive evidence of their authority to act on behalf of the Limited Liability Company. Any Agent, so long as they act in a representative capacity as an Agent of the Limited Liability Company, is authorized to make any and all other contracts, agreements, stipulations and orders which they may deem advisable for the effective exercise of the powers indicated within this document, from time to time with the Financial Institution, subject to any restrictions on this resolution or otherwise agreed to in writing.

(4) All transactions, if any, with respect to any deposits, withdrawals, rediscounts and borrowings by or on behalf of the Limited Liability Company with the Financial Institution prior to the adoption of this resolution are hereby ratified, approved and confirmed.

(5) The Limited Liability Company agrees to the terms and conditions of any account agreement, properly opened by any Agent of the Limited Liability Company. The Limited Liability Company authorizes the Financial Institution, at any time, to charge the Limited Liability Company for all checks, drafts, or other orders, for the payment of money, that are drawn on the Financial Institution, so long as they contain the required number of signatures for this purpose.

(6) The Limited Liability Company acknowledges and agrees that the Financial Institution may furnish at its discretion automated access devices to Agents of the Limited Liability Company to facilitate those powers authorized by this resolution or other resolutions in effect at the time of issuance. The term "automated access device" includes, but is not limited to, credit cards, automated teller machines (ATM), and debit cards.

(7) The Limited Liability Company acknowledges and agrees that the Financial Institution may rely on alternative signature and verification codes issued to or obtained from the Agent named on this resolution. The term "alternative signature and verification codes" includes, but is not limited to, facsimile signatures on file with the Financial Institution, personal identification numbers (PIN), and digital signatures. If a facsimile signature specimen has been provided on this resolution, (or that are filed separately by the Limited Liability Company with the Financial Institution from time to time) the Financial Institution is authorized to treat the facsimile signature as the signature of the Agent(s) regardless of by whom or by what means the facsimile signature may have been affixed so long as it resembles the facsimile signature specimen on file. The Limited Liability Company authorizes each Agent to have custody of the Limited Liability Company's private key used to create a digital signature and to request issuance of a certificate listing the corresponding public key. The Financial Institution shall have no responsibility or liability for unauthorized use of alternative signature and verification codes unless otherwise agreed in writing.

(8) The Limited Liability Company acknowledges that the Financial Institution does not allow any account to have dual or multiple signature requirements and the Limited Liability Company waives any requirement that the Financial Institution not process items without more than one signature.

Limited Liability Company Authorization Resolution
© 2018 Wolters Kluwer Financial Services, Inc.
All rights reserved. Custom EORLLC12

**Effect on Previous Resolutions.** This resolution supersedes resolution dated _____. If not completed, all resolutions remain in effect.

**Certification of Authority**

I further certify that the Managers or Designated Members of the Limited Liability Company have, and at the time of adoption of this resolution had, full power and lawful authority to adopt the resolutions stated above to confer the powers granted above to the persons named who have full power and lawful authority to exercise the same.

In Witness Whereof, I have subscribed my name to this document of the Limited Liability Company on _____ _(date)_.

eSigned By:
*Sam Ikkurty*
Aug 21, 2020 3:49:33 PM PDT

_____          _____
_Manager or Designated Member_                   _Attest by One Other Manager or Designated Member_
Sam Ikkurty

☒  Manager or Designated Member, acting alone, has full authority to represent, sign for, and bind the company.
Manager Initials [ _SI_ ].

---

**For Financial Institution Use Only**

Acknowledged and received on                    _(date)_ by _____ _(initials)_

**Comments:**

---

Limited Liability Company Authorization Resolution
© 2018 Wolters Kluwer Financial Services, Inc.
All rights reserved. Custom EORLLC12

# EXHIBIT H



## CERTIFICATION

With respect to: Ikkurty Capital LLC

1.  I, Sandra A. Jung, am employed by National Futures Association ("NFA") as Document Research Supervisor. I also have served as Deputy Record Custodian since May 6, 1996. NFA is a futures association registered with the U.S. Commodity Futures Trading Commission ("CFTC") under Section 17 of the Commodity Exchange Act ("Act"). 7 U.S.C. § 21 (2006).

2.  Under Sections 4f, 4k, 4n, 8a and 19 of the Act, the CFTC is authorized to collect and maintain registration records for each category of registration under the Act. 7 U.S.C. §§ 6f, 6k, 6n, 12a and 23 (2006). Under Sections 8a(10) and 17o of the Act, 7 U.S.C. §§ 12a(10) and 21o (2006), the CFTC has delegated to NFA the responsibility and authority to process and act as custodian of the official CFTC registration records for all categories of registration under the Act.

3.  Pursuant to the CFTC's delegation of responsibility and authority, NFA receives, processes, stores and records all official CFTC registration records in the normal, ordinary and regular course of NFA's business. NFA has adopted Registration Rules, which the CFTC has reviewed and approved, governing access to and certification of the official CFTC registration records.

4.  As Deputy Record Custodian, I am responsible for NFA's receipt, processing, storage and recording of all official CFTC registration records. As such, I am familiar with these records and the system that NFA uses to maintain these records.

5.  In accordance with Rules 803(6), 803(7), and 902(11) of the Federal Rules of Evidence, CFTC registration records: (1) are regularly kept for persons and entities registered with the CFTC; (2) are made at or near the time by, or from information transmitted by, a person with knowledge of those records; (3) are kept in the course of a regularly conducted business activity; and (4) are made as a regular practice in the course of regularly conducted business activity.

- 2 -

6.    Under my supervision, I have caused to be conducted a review of these official CFTC records from July 1982 to the present, which disclosed the following information:

> There is no record of a registration, an application for registration, or an exemption from registration in any capacity for Ikkurty Capital LLC.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date:  March 30, 2022

*Sandra A. Jung*
Deputy Record Custodian

National Futures Association
300 South Riverside Plaza
Suite 1800
Chicago, Illinois  60606

# EXHIBIT I

De.aware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

Department of State: Division of Corporations

Allowable Characters

HOME

### Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | **4412794** | Incorporation Date / Formation Date: | **12/10/2020** (mm/dd/yyyy) |
| Entity Name: | **ROSE CITY INCOME FUND II LP** | | |
| Entity Kind: | **Limited Partnership** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | **COGENCY GLOBAL INC.** | | |
| Address: | **850 NEW BURTON ROAD SUITE 201** | | |
| City: | **DOVER** | County: | **Kent** |
| State: | **DE** | Postal Code: | **19904** |
| Phone: | **800-483-1140** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.
Would you like ○ Status ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]          [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov