# EXHIBIT P



# LIMITED PARTNERSHIP AGREEMENT

# LIMITED PARTNERSHIP AGREEMENT

of

## ROSE CITY INCOME FUND II LP

AGREEMENT OF LIMITED PARTNERSHIP (this "Agreement") dated as of January 1, 2021, by and among JAFIA LLC, as general partner (the "General Partner") and all the parties who sign copies of this agreement to become limited partners (the "Limited Partners"). (The General Partner and the persons who sign as Limited Partners are sometimes collectively referred to as the "Partners", and each individually as a "Partner", where no distinction is required.) Whenever the masculine or feminine gender is used in this Agreement, it will equally, where the context permits, include the other, as well as include entities.

## ARTICLE I

### General Provisions

Section 1.01  Formation.  The parties hereto formed Rose City Income Fund II LP as a limited partnership (the "Partnership") pursuant to the provisions of the Delaware Revised Uniform Limited Partnership Act (the "Act"). The existence of the Partnership commenced upon the filing with the Secretary of State of the State of Delaware of a Certificate of Limited Partnership in accordance with the provisions of such law.

Section 1.02  Partnership Name.  The name of the Partnership is Rose City Income Fund II LP.

Section 1.03  Purpose.  The purpose of the Partnership is to serve as a fund through which the assets of its Partners will be utilized to invest, hold and trade in digital currencies, cryptoassets, cryptocurrencies, decentralized application tokens and protocol tokens, blockchain based assets and other cryptofinance and digital assets that currently exist, or may exist in the future (collectively, "Digital Assets"), and other financial instruments of any name and nature which exist now or are hereafter created and rights and options relating thereto.

Section 1.04  Registered Office and Agent for Service of Process.  The registered office of the Partnership shall be located at 251 Little Falls Drive, Wilmington, Delaware 19808 and the registered agent for service of process shall be Corporation Service Company.

Section 1.05  Place of Business.  The principal mailing address of the Partnership shall be located at 7028 West Waters Ave, Suite 145, Tampa, Florida 33634 or at such other place as the General Partner shall determine from time to time.

Section 1.06  Fiscal Year and Fiscal Periods.  The fiscal year of the Partnership shall end on December 31 of each year, subject to change by the General Partner from time to time. A new fiscal period ("Fiscal Period") shall commence on the first day of each month, on each date of any capital contribution to the Partnership, on each date next following the date of

any withdrawal of capital or retirement from the Partnership and on any other date as determined by the General Partner in its sole discretion, and the prior Fiscal Period shall end on the date immediately preceding such date of commencement of a new Fiscal Period.

Section 1.07    Liability of the Limited Partners.  Except as expressly provided in the Act, the Limited Partners shall not be liable for any liabilities, or for the payment of any debts and obligations, of the Partnership.

Section 1.08    Assignability of Limited Partnership Interest.    The limited partnership interest of a Limited Partner in the Partnership or any beneficial interest therein may not be assigned, in whole or in part, except with the prior written consent thereto of the General Partner given in its sole discretion.  Upon such an assignment of a limited partnership interest, the assignee shall become a Limited Partner upon the execution of such agreements and other documents as shall be required by the General Partner.

## ARTICLE II

### Admissions; Series

Section 2.01    Admission of Partners.  With the consent of the General Partner, additional Limited Partners may be admitted to the Partnership on a monthly basis or on any other date selected by the General Partner.  The General Partner may admit additional or substitute general partners (i) as of the beginning of any calendar quarter upon 60 days' prior written notice to all Limited Partners, (ii) at any time with the consent of the majority in interest of the Limited Partners, or (iii) at any time if such additional or substitute general partners are affiliates of the General Partner or its principals.  In connection with the admission of a Partner to the Partnership, such Partner shall, in advance of such admission and as a condition thereto, sign a copy of this Agreement or a supplement hereto pursuant to which he agrees to be bound by the terms of this Agreement.

Section 2.02    Series of Limited Partnership Interests.  The General Partner may, in its sole discretion, create and issue additional series or sub-series of Interests in the future with offering terms and conditions that are different from, or more advantageous than, those described herein.  The General Partner may also close the Partnership or any series to capital contributions as determined in its sole discretion.

## ARTICLE III

### Management of Partnership

Section 3.01    Management of the Partnership.  The Partnership shall be managed by the General Partner, which shall have the sole discretion of making investments on behalf of the Partnership and of exercising the powers set forth in Section 3.02.  The General Partner may appoint such agents of the Partnership as it deems necessary who shall hold such offices and shall exercise such powers of the General Partner in the management of the Partnership and perform such duties in connection therewith as shall be determined from time to time by the General Partner.  The General Partner shall devote so much of its time and efforts to the affairs of the

Partnership as may, in its judgment, be necessary to accomplish the purposes of the Partnership. Nothing herein contained shall prevent the General Partner or any of its directors, members, partners, shareholders, officers, employees, agents or affiliates (collectively, the "Affiliated Parties") or any other Partner from conducting any other business, including any business within the securities industry, whether or not such business is in competition with the Partnership. Without limiting the generality of the foregoing, the Affiliated Parties may act as general partner, investment adviser or investment manager for others, may manage funds, separate accounts or capital for others, may have, make and maintain investments in their own name or through other entities, and may serve as an officer, director, consultant, partner or stockholder of one or more investment funds, partnerships, securities firms or advisory firms.

Section 3.02    Powers of the General Partner.  The General Partner shall have the following powers on behalf of the Partnership to be exercised in accordance with Section 3.01:

(a)    To purchase, hold, sell, sell short, cover and otherwise deal in Digital Assets and financial instruments of any sort and rights therein, including restricted and privately issued instruments, on margin or otherwise;

(b)    To loan its Digital Assets to other market participants and engage in "staking" of Digital Assets;

(c)    write, purchase, hold, sell and otherwise deal in put and call options of any sort and in any combination thereof;

(d)    To purchase, hold, sell, sell short and otherwise deal in commodities, commodity contracts, commodity futures, financial futures (including index futures) and options in respect thereof;

(e)    To purchase, hold, sell, sell short and otherwise deal in currencies, options thereon and rights therein, including forward foreign currency exchange contracts;

(f)    To purchase, hold, sell and otherwise deal in derivatives, swap contracts, partnership interests, interests in other investment companies or any other financial instruments which exist now or are hereafter created;

(g)    To conduct margin accounts with brokers; to open, maintain and close bank accounts and draw checks or other orders for the payment of moneys; to pledge securities for loans, and to effect borrowings from brokers, banks and other financial institutions;

(h)    To enter into, make and perform any other contracts, agreements or other undertakings it may deem advisable in conducting the business of the Partnership, including but not limited to contracts, agreements or other undertakings with persons, firms or corporations with which the General Partner or any other Partner is affiliated;

(i)    To engage attorneys, independent accountants, administrators and such other persons as the General Partner may deem necessary and advisable;

5

(j)     To enter into, make and perform agreements with one or more Limited Partners which have the effect of modifying the terms of this Agreement;

(k)     To invest all or a portion of the Partnership's assets in other investment vehicles, including a master fund or similar investment vehicles, as the General Partner may form, from time to time;

(l)     To appoint other persons, including both affiliates and non-affiliates of the General Partner as the General Partner may determine from time to time in its sole discretion, to serve as the investment manager of the Partnership for purposes of providing certain administrative and investment advisory services to the Partnership;

(m)     To serve as the "partnership representative" of the Partnership within the meaning of Section 6223(a) of the Internal Revenue Code of 1986, as amended (the "Code") (and any similar provisions under any applicable state, local or foreign tax laws);

(n)     To determine all matters, and to take any actions, with respect to preparing and filing any tax return of the Partnership and any audit, examination or investigation (including any judicial or administrative proceeding) of the Partnership by any taxing authority; and

(o)     To act for the Partnership in all other matters.

Section 3.03    Limitation of Liability; Indemnification.

(a)     The General Partner, each of its directors, members, partners, shareholders, officers, employees, agents and affiliates, and any person or persons designated pursuant to Section 9.02 of this Agreement shall not be liable for any loss (including losses due to trade errors caused by such persons) or cost arising out of, or in connection with, any act or activity undertaken (or omitted to be undertaken) in connection with the Partnership, including any such loss sustained by reason of any investment or the sale or retention of any security or other asset of the Partnership, except that any person exculpated from liability under this Section shall not be exculpated from any liability arising from losses caused by his, her or its gross negligence, willful misconduct or violation of applicable laws.

(b)     The General Partner, each of its directors, members, partners, shareholders, officers, employees, agents and affiliates, and each person designated pursuant to Section 9.02 of this Agreement (each an "Indemnitee") shall be indemnified and held harmless by the Partnership to the fullest extent legally permissible under and by virtue of the laws of the State of Delaware, as amended from time to time, from and against any and all loss, liability and expense (including, without limitation, losses due to trade errors caused by such persons, judgments, fines, amounts paid or to be paid in settlement and reasonable attorney's fees and expenses) incurred or suffered by the Indemnitee in connection with the good faith performance by the Indemnitee of his, her or its responsibilities to the Partnership; provided, however, that an Indemnitee shall not be indemnified for losses resulting from his, her or its gross negligence, willful misconduct or violation of applicable laws. Upon request, the Partnership shall, in the discretion of the General Partner, advance

5

amounts and/or pay expenses as incurred in connection with the indemnification obligation herein; provided, however, that if it is later determined that such party was not entitled to indemnification, then such party will promptly reimburse the Partnership for all advanced amounts. In the event this indemnification obligation shall be deemed to be unenforceable, whether in whole or in part, such unenforceable portion shall be stricken or modified so as to give effect to this paragraph to the fullest extent permitted by law. The indemnification provided in this Section shall in no event cause any Limited Partner to incur any liability beyond the limited liability provided in Section 1.07.

## ARTICLE IV

### Expenses of the Partnership, Overhead and Other Expenses, Organizational Expenses; Management Fee

Section 4.01    Expenses of the Partnership.    The General Partner (or an entity designated by it) shall be authorized to incur and pay in the name and on behalf of the Partnership all expenses that it deems necessary or desirable.

Section 4.02    Overhead and Other Expenses.    The General Partner shall render its services to the Partnership at its own expense and is responsible for its overhead expenses including:    office rent; furniture and fixtures; stationery, supplies; secretarial/internal administrative services; salaries and bonuses; entertainment expenses; employee insurance; payroll taxes and its own compliance expenses.

All other expenses shall be borne by the Partnership and shall include: investment related expenses such as the Partnership's currency exchange fees, hardware and physical vaults for storage of private keys, insurance for the assets of the Partnership, interest on margin accounts and other indebtedness, bank service fees and any similar custodial expenses, withholding and transfer fees, taxes, systems and technology expenses (including research and data feeds and order management systems or similar), trading costs and expenses including commissions or similar, third party research tools and retainers, corporate licensing fees, legal and audit expenses, third party accounting, fund administration, compliance filing fees and expenses (including regulatory filings made in respect of the Partnership such as Form PF preparation and filing expenses), outsourced risk management advisory services and software, investment related consultants and travel costs that are research related, expenses incurred with respect to the preparation, duplication and distribution to Limited Partners and prospective Limited Partners of Partnership offering documents, annual reports and other financial information, marketing and syndication expenses (including those incurred in marketing limited partnership interests in the European Union), any other services or service provider expenses deemed necessary by the General Partner on behalf of the Partnership, and any other expenses related to the purchase, sale, preservation or transmittal of Partnership assets.

Section 4.03    Organizational Expenses.    The organizational expenses of the Partnership (including expenses of the initial offer and sale of Interests) will be paid by the Partnership. Organizational expenses, for net asset value purposes, may be amortized over a period of up to 60 months from the date the Partnership commences operations.

Section 4.04    Management Fee.  The Partnership shall pay to the General Partner a monthly management fee calculated at an annual rate of 2.0% of each Capital Account (collectively, the "Management Fee").  The Management Fee shall be paid monthly in advance based on the value of each Limited Partner's Capital Account as of the first "Business Day" of each calendar month, adjusted for contributions and withdrawals made during the month and calculated without accrual of the Incentive Allocation.  (For the purposes of this Agreement, a "Business Day" shall mean any day on which banks are open in New York.)  The General Partner, in its sole discretion, may waive or modify the Management Fee for Limited Partners that are members, employees or affiliates of the General Partner, relatives of such persons, and for certain large or strategic investors.

## ARTICLE V

### Capital Accounts and Capital Contributions

Section 5.01    Capital Accounts.  A Partner's "Capital Account" as of a particular date shall consist of the following:

      (a)      an amount equal to his original capital contribution;

      (b)      the additions, if any, to such account by reason of capital contributions made on or before such date; and

      (c)      the adjustments, if any, to such account in accordance with the provisions of Sections 4.04, 5.03, 11.01 and Article VI.

Section 5.02    Capital Contributions.    Contributions to the capital of the Partnership by Limited Partners shall be made in cash, or, in the General Partner's sole discretion, in securities or partly in cash and partly in securities.

Section 5.03    Certain Adjustments to Capital Accounts.    The amount of withdrawals, if any, made by a Partner shall be deducted from such Partner's Capital Account as of the date of such withdrawal.

Section 5.04    Additional Contributions to Capital.    A Partner may, with the consent of the General Partner, make additional contributions to the capital of the Partnership on the first day of each month and on any other date selected by the General Partner.

## ARTICLE VI

### Allocation of Net Profits and Net Losses;
### Determination of Net Profits and Net Losses

Section 6.01    Allocation of Net Profits and Net Losses.

      (a)      Any Net Profits or Net Losses (as defined below) during any Fiscal Period shall be allocated as of the end of such Fiscal Period to the Capital Accounts of all the Partners in the proportion that the balance of each Partner's Capital Account as of the

beginning of such Fiscal Period bore to the aggregate of the Capital Accounts of all the Partners as of the beginning of such Fiscal Period.

(b)     If in any calendar month, the Net Profits allocated to a particular Limited Partner's Capital Account pursuant to Section 6.01(a) exceed the Net Losses so allocated to such Limited Partner's Capital Account, there shall be reallocated to the Capital Account of the General Partner at the end of the month an amount equal to 20.0% of the Net Profits attributable to the Limited Partner's Capital Account, if any (the "Incentive Allocation"); provided, however, that no Incentive Allocation for a particular Limited Partner will be made until the Net Profits for the period exceed such Limited Partner's loss carryforward amount. The loss carryforward amount for a particular Limited Partner shall be the sum of all prior Net Losses allocated to the Limited Partner that have not been subsequently offset by Net Profits; provided further, however, that the loss carryforward amount shall be reduced proportionately to reflect any withdrawals made by such Limited Partner. The General Partner, in its sole discretion, may waive or modify the Incentive Allocation for Limited Partners that are members, employees or affiliates of the General Partner, relatives of such persons, and for certain large or strategic investors.

(c)     In the event that a Limited Partner withdraws capital (in whole or in part) or retires at any time other than the end of a calendar month, the General Partner shall be entitled to the Incentive Allocation, with respect to such Limited Partner, calculated as though the applicable withdrawal or retirement date was the last day of the month.

Section 6.02     Determination of Net Profits and Net Losses. "Net Profits" or "Net Losses" of the Partnership for a Fiscal Period shall be determined by the General Partner on the accrual basis of accounting using United States generally accepted accounting principles ("GAAP") as a guideline and further in accordance with the following:

(a)     Net Profits and Net Losses shall include realized and unrealized profits and losses with respect to all Digital Asset positions. In computing such realized and unrealized profits and losses, profit and loss shall mean for each position held in a Digital Asset during any Fiscal Period, the realized or unrealized appreciation or realized or unrealized depreciation, as the case may be, with respect to such position, determined by comparing the net proceeds from the closing of such position or the market value of such position at the end of such Fiscal Period with (i) the cost of such position if established during such Fiscal Period or (ii) if such position were established during a prior Fiscal Period, the market value of such position at the end of the last preceding Fiscal Period. Digital Assets contributed to the Partnership shall be treated as if purchased by the Partnership at market value on the date of contribution, and Digital Assets distributed from the Partnership shall be treated as if sold by the Partnership at market value on the date of distribution.

(b)     Whenever the fair value of assets is required to be determined under this Agreement, the General Partners shall determine such fair value in accordance with the valuation policies and procedures maintained and adopted by the General Partner for the Partnership.

5

(c)     There shall be deducted in computing Net Profits and Net Losses estimated expenses for legal and audit services and other expenses, if any, in respect of the particular Fiscal Period (whether performed therein or to be performed thereafter), and such reserves for contingent liabilities of the Partnership, including estimated expenses, if any, in connection therewith, as the General Partner shall determine. The Management Fee payable pursuant to Section 4.04 shall be deducted in computing Net Profits and Net Losses for purposes of computing the Incentive Allocation. Overhead expenses borne by the General Partner pursuant to Section 4.03 shall not be deducted in computing Net Profits and Net Losses.

(d)     The organizational expenses of the Partnership may, for net asset value purposes, be amortized over a period of 60 months from the date the Partnership commences operations and the amortizable portion of the organizational expenses shall be deducted in computing Net Profits and Net Losses.

Section 6.03     Allocation of Prior Fiscal Period Items. Anything herein to the contrary notwithstanding, any items of income, gain, loss or deduction for a Fiscal Period ("Current Fiscal Period") attributable to any Partnership matter or transaction occurring during a prior Fiscal Period (such items of income, gain, loss or deduction are referred to herein as "Prior Fiscal Period Items") which shall exceed the lesser of (a) $50,000 or (b) 1% of the Capital Accounts of all Partners as of the beginning of the Current Fiscal Period may, at the sole discretion of the General Partner, be allocated among the Partners (including persons who have ceased to be Partners) in proportion to their Capital Accounts as of the beginning of such prior Fiscal Period. In the case of a person who is a Partner during the Current Fiscal Period, the Prior Fiscal Period Items shall be considered an item of Net Profit or Net Loss for the Current Fiscal Period for purposes of Section 6.01(b). In the case of a person who has ceased to be a Partner, the Prior Fiscal Period Items shall be considered an item of Net Profit or Net Loss in the last Fiscal Period in which such person was a Partner for purposes of computing the allocation of such Prior Fiscal Period Items between the person who ceased to be a Partner and the General Partner.

## ARTICLE VII

### Allocation of Income for Tax Purposes

Section 7.01     Ordinary Deductions and Ordinary Income. For Federal income tax purposes, all items of deduction other than losses from the sale or deemed sale of securities or other investments, and all items of income other than gains from the sale or deemed sale of securities or other investments, shall be allocated, as nearly as is practicable, in accordance with the manner in which such items of deduction or income affected the amounts that were either deducted from or added to the Capital Accounts of the Partners.

Section 7.02     Gains and Losses on Contributed Securities. For Federal income tax purposes, gains and losses from the sale or deemed sale of securities or other investments contributed by a Partner to the capital of the Partnership shall be allocated in accordance with the provisions of Section 704(c) of the Code.

Section 7.03   Other Gains and Losses.   Except as provided in Section 7.02, for Federal income tax purposes, gains and losses, including gross items thereof, from the sale or deemed sale of securities or other investments in any fiscal year shall be allocated, as nearly as is practicable, in accordance with the manner in which the increase or decrease in the value of the investments giving rise to such gains or losses was added to or deducted from the Capital Accounts of the Partners in such fiscal year and prior fiscal years.   The Partnership may, but is not required to, use an aggregate approach in making such allocations.

Section 7.04   Allocation of Income, Gains and Losses to Retiring Partners. Notwithstanding Section 7.03 above, in the event a Partner retires from the Partnership (including mandatory withdrawals under Section 8.04), the General Partner, in its sole discretion, may make a special allocation to said Partner for Federal income tax purposes of the income, gains or losses, as the case may be, recognized by the Partnership in such a manner as will reduce the amount of the difference, if any, between such Partner's Liquidating Share (as defined in Section 10.01) and his Federal income tax basis in his interest in the Partnership before such allocation.

Section 7.05   Death of a Partner.   If a Partner dies on a day other than the last day of a Fiscal Period, all items of income, gain, loss or deduction for such Fiscal Period allocable to such Partner pursuant to this Article VII shall be allocated to such Partner for Federal income tax purposes based on a fraction, the numerator of which shall be the number of days (including the date of death) that the Partner was alive during such Fiscal Period, and the denominator of which shall be the total number of days in such Fiscal Period.   The balance of such items allocable to such Partner for such Fiscal Period shall be allocated to the deceased Partner's estate.   Each Partner agrees on behalf of the Partner and the Partner's estate that any executor or other fiduciary filing any tax returns on their behalf will treat this allocation as effecting a termination of the taxable year of the Partnership for Federal income tax purposes in order to determine their respective shares of such items for any applicable reporting period.

## ARTICLE VIII

### Withdrawals from Capital Accounts and Retirements

Section 8.01   Permissible Withdrawals.   A Partner may withdraw all or any part of its Capital Account (as defined in Section 5.01) in the manner and to the extent provided in Section 8.02.

Section 8.02   Withdrawal Procedure From Capital Account.

(a)   Upon at least 60 days' prior written notice to the Partnership, a Limited Partner may withdraw all or any portion of its Capital Account attributable to a particular capital contribution as of the last Business Day of each calendar month occurring on or after the one-year anniversary of the date such capital contribution was made; provided, however, that a Limited Partner may withdraw all or any portion of its Capital Account attributable to a particular capital contribution as of the last Business Day of each calendar month occurring prior to the one-year anniversary of the date such capital contribution was made, upon the payment of an early withdrawal fee equal to 3.0% payable to the Partnership.

5

(b)      A notice of withdrawal must state the amount to be withdrawn or the basis on which such amount is to be determined.  A withdrawal request, once given, may not be withdrawn without the consent of the General Partner, except upon a declaration of the suspension of the determination of net asset value and/or withdrawals.

(c)      A Limited Partner withdrawing only a portion of its Capital Account will generally be paid within 30 days after the Withdrawal Date; provided, however, that if a Limited Partner withdraws at least 90% of its Capital Account, it will be paid in the same manner as a fully retiring Limited Partner (i.e., at least 90% of the amount requested to be withdrawn, as adjusted for capital appreciation and depreciation, will be paid within 30 days after the date of such Partner's retirement or the end of the fiscal year, as the case may be, with the balance to be paid without interest thereon after a final determination of the value of all of the Capital Accounts in the Partnership, which may be after the completion of the Partnership's annual audit or preparation of the Partnership's financial statements, as applicable).  Up to the remaining 10% of the balance of such withdrawing Limited Partner's Capital Account on the withdrawal date shall be paid to such Limited Partner upon completion of the audit of the Partnership's financial statements for the fiscal year involved or as soon thereafter as is reasonably practicable and without interest thereon.

(d)      The General Partner may withdraw all or any portion of its Capital Account on the last Business Day of each quarter; provided, however, that the amount withdrawn may not reduce its Capital Account below the lesser of $100,000 or 1% of the Capital Account of all of the Partners.

(e)      The General Partner, in its sole discretion, may waive or modify the Partnership's withdrawal terms for any Limited Partner in its sole discretion.

Section 8.03    Payment on Retirement.    Retirement of a Partner, whether by (a) withdrawal of such Partner's entire Capital Account, or (b) action of the General Partner under Section 8.04, shall be subject to the provisions of Article X. Limited Partners who make partial withdrawals of less than 90% of their Capital Account will be paid as promptly as practicable, generally within 30 days.

Section 8.04    Mandatory Withdrawals. The General Partner, in its sole discretion, may require any Limited Partner to withdraw all or any part of its Capital Account from the Partnership at any time on not less than 10 days' prior written notice, such withdrawal to be effective on the date specified in such notice.  If the General Partner, in its sole discretion, deems it to be in the best interests of the Partnership to do so because the continued participation of any Limited Partner in the Partnership might cause the Partnership to violate any law, rule or regulation or expose the Partnership to the risk of litigation, arbitration, administrative proceedings or any similar action or proceeding, the General Partner may require such Limited Partner to withdraw all or any part of its Capital Account from the Partnership at any time on not less than 5 days' prior written notice, such withdrawal to be effective on the date specified in such notice.  A Limited Partner who is required to withdraw all of its Capital Account pursuant to this Section 8.04 shall (i) be entitled to receive the value of its Liquidating Share (as defined in Section 10.01) and (ii) shall be deemed to have retired from the Partnership (and shall cease thereafter to be a Partner as of the effective date of the complete withdrawal).

Section 8.05    Special Withdrawal Rights.  Subject to the suspension provisions described in Section 8.08, if Sam Ikkurty (i) dies, (ii) becomes legally incapacitated such that he is unable to participate in the management of the Partnership's portfolio in the same manner as immediately before the onset of his incapacity or (iii) ceases to be involved in the management of the Partnership's portfolio for more than 60 consecutive days, the Partnership shall promptly provide the Limited Partners with notice of such occurrence (such notice being the "Key Man Notice").  Limited Partners shall have 30 days from the date the Partnership sends the Key Man Notice to submit a full or partial withdrawal request to the Partnership, such withdrawal to be effective as of the last day of the month that occurs 15 days after the date such withdrawal notice is received by the Partnership, without regard to any lock-up or applicable withdrawal fee provisions set forth above.

Section 8.06    Distributions in Cash or in Kind.  All distributions to a Partner by reason of the Partner's partial or complete withdrawal (including mandatory withdrawals under Section 8.04) from the Partnership shall be made in cash or, in the sole discretion of the General Partner, in Digital Assets and/or securities selected by the General Partner or partly in cash and partly in Digital Assets and/or securities selected by the General Partner.  If the General Partner determines to distribute Digital Assets and/or securities in kind, such assets may be distributed directly to the withdrawing Partner or alternatively, and without limitation, (a) may comprise interests in special purpose vehicles established by the Partnership for the purpose of liquidating the assets that are being transferred (either outright or by a participation in the Partnership) or (b) distributed into a liquidating trust, series, entity or liquidating account and sold by the Partnership for the benefit of the withdrawing Partner.  In each case set forth in (a) or (b) above, (i) payment to such Partner of that portion of his withdrawal attributable to such assets will be delayed until such time as such assets can be liquidated and (ii) the amount otherwise due such Partner will be increased or decreased to reflect the performance of such assets through the date on which the liquidation of the assets is effected and the applicable Management Fee, Incentive Allocation and expenses.

Section 8.07    Reserve.  The payment to a withdrawing Partner of some or all of his Capital Account may be subject to the retention of a reserve, in such amount as the General Partner will determine in its sole discretion, for Partnership liabilities and contingencies.  Upon the General Partner's determination that such reserve (or a portion thereof) is no longer required, there will be distributed to such Partner his proportionate share of the reserve which is no longer required without interest thereon.

Section 8.08    Suspension of Withdrawals.  The General Partner may suspend (in whole or in part) the calculation of net asset value, the issuance of Interests, the right of the Limited Partners to make withdrawals and/or the payment of withdrawal proceeds during any period when:

(i)    any market or stock exchange on which a substantial part of the Digital Assets and/or securities owned by the Partnership are traded is closed, otherwise than for ordinary holidays, or dealings thereon are restricted or suspended;

(ii)    there exists any state of affairs that constitute a state of emergency or period of extreme volatility or illiquidity as a result of which (a) disposal of some

or all of the investments of the Partnership would not be reasonably practicable or cannot be completed in a timely fashion to meet withdrawal requirements and might seriously prejudice the Limited Partners or (b) it is not reasonably practicable for the Partnership to determine fairly the value of some or all of its net assets;

(iii)    there is a breakdown in the means of communication normally employed in determining the prices of a substantial part of the investments of the Partnership;

(iv)    in the reasonable good faith discretion of the General Partner, the liquidation of assets to fund withdrawals would result in unreasonable losses to the Partnership and its Limited Partners;

(v)    in its sole judgment, a material adverse change or disruption has occurred in the financial, banking or capital markets generally, which has had or could reasonably be expected to have a material adverse effect on the Partnership; or

(vi)    none of the requests for withdrawals that have been made may be lawfully satisfied by the Partnership in U.S. dollars.

## ARTICLE IX

### Term and Dissolution of the Partnership

Section 9.01   Term of the Partnership.  The Partnership shall continue from year to year, unless dissolved as hereinafter provided.

Section 9.02   Dissolution of the Partnership.  The Partnership may be dissolved at any time by the General Partner, and thereupon the affairs of the Partnership shall be wound up by the General Partner. If the General Partner retires, dissolves or becomes bankrupt or insolvent, the Partnership shall dissolve unless (i) at such time there is another general partner who agrees to continue the business of the Partnership, or (ii) an entity controlled by Sam Ikkurty (the managing member of the General Partner) is substituted as general partner to continue the business of the Partnership. If there is no remaining general partner who agrees to continue the business of the Partnership or an entity controlled by Sam Ikkurty is not substituted as general partner, the Partnership shall dissolve and thereupon be wound up by the General Partner, or if the General Partner is unavailable, by the person or persons previously designated (a) by the General Partner, or (b) if the General Partner has made no such designation, by Limited Partners owning a majority-in-interest of the Capital Accounts of all the Limited Partners as of the date of dissolution. Such person shall take all steps necessary or appropriate to wind up the affairs of the Partnership as promptly as practicable thereafter. Such person is hereinafter referred to as the "Liquidator." Neither the admission of Partners nor the retirement, bankruptcy, death, legal incapacity or disability of a Limited Partner shall dissolve the Partnership.

Section 9.03   Procedure on Winding Up.

(a)     Upon the winding up of the Partnership, a full account of the assets and liabilities of the Partnership shall be taken and the assets of the Partnership shall be liquidated to the extent determined by the General Partner (or the Liquidator) and, as promptly as practicable, the cash proceeds thereof shall be applied in the following order of priority:

(i)     to the payment of all debts, taxes, obligations and liabilities of the Partnership (including amounts owed to Partners who are creditors) including the expenses of liquidation; provided that the General Partner (or the Liquidator) may establish reserves for contingent liabilities of the Partnership in an amount (including estimated expenses, if any, in connection therewith) determined by the General Partner (or the Liquidator) and upon the satisfaction of such contingent liabilities the amounts, if any, remaining in such reserves shall be distributed as provided in subparagraph (ii) of this Section 9.03(a); and

(ii)    to the payment to Partners of their remaining Capital Accounts in proportion to the amounts thereof.

(b)     Distributions to a Partner pursuant to subparagraph (a)(ii) may be made in installments and shall be made in cash or, in the discretion of the General Partner (or the Liquidator), in Digital Assets and/or securities selected by the General Partner (or the Liquidator), or partly in cash and partly in Digital Assets and/or securities selected by the General Partner (or the Liquidator).

(c)     Upon the winding up of the Partnership, the name of the Partnership and its goodwill shall not be appraised, sold or otherwise liquidated but shall remain the exclusive property of the General Partner.

(d)     Within 90 days after the completion of the winding up of the Partnership, the General Partner (or the Liquidator) shall cause to be prepared and forwarded to each Partner a final statement and report of the Partnership, prepared in accordance with Section 11.04.

## ARTICLE X

### Payments to and by a Person
### Who Has Ceased to be a Partner

Section 10.01 <u>Payments on Retirement, Death, Bankruptcy or Legal Incapacity of any Partner.</u> Within 30 days after (a) the date of retirement of a Partner hereunder or (b) at the sole discretion of the General Partner, the last day of the fiscal year during which a Partner died, became bankrupt or legally incapacitated, there shall be paid or distributed to such Partner or to the legal representative of such Partner, an amount in cash or, as determined by the General Partner, in Digital Assets and/or securities selected by the General Partner or in cash, Digital Assets and/or securities selected by the General Partner, equal in value to not less than 90% of the estimated amount of the Liquidating Share (as hereinafter defined) of such Partner. Promptly after the General Partner has determined the Capital Accounts of the Partners as of such date (which in the General Partner's sole discretion may be after the Partnership's independent public accountants have completed their examination thereof required by Section 11.04 or preparation of the Partnership's financial statements, as applicable), the Partnership shall pay to such Partner or his representative, in cash, Digital Assets and/or securities selected by the General Partner, the amount of the excess, if any, of the Liquidating Share of such Partner over the amount so paid, or such Partner or representative shall return and pay to the Partnership in cash the amount of the excess, if any, of the amount so paid over such Liquidating Share, in each case without interest thereon. The term "Liquidating Share", when used with respect to any retiring, deceased, bankrupt or legally incapacitated Partner, shall mean the Capital Account of such Partner on the date in question.

Section 10.02 <u>Reserve for Liability and Payment of Prior Fiscal Period Items by Person Who Has Ceased to be a Partner.</u>

(a) The right of any retired, deceased, bankrupt, or legally incapacitated or disabled Partner (or their legal representative) to have distributed the Liquidating Share of such Partner shall in all instances be subject to retention by the Partnership of a reserve, in such amount as shall be determined by the General Partner, in its sole discretion, for Partnership liabilities and for other contingencies. Upon determination by the General Partner that such reserve (or portion thereof) is no longer required, there shall be distributed to such Partner his proportionate share of the reserve which is no longer required, without interest thereon.

(b) A person who has ceased to be a Partner will be liable for his proportionate share of Prior Fiscal Period Items as provided in Section 6.04 in addition to his share of the reserve established with respect to such person pursuant to Section 10.02(a) and such person shall pay his share of such amount promptly on demand, but the amount to be paid shall not be in excess of his Capital Account at the time such Prior Fiscal Period Item arose.

## ARTICLE XI

### Miscellaneous Provisions

Section 11.01 <u>Withholding Taxes</u>. Any taxes, fees or other charges the Partnership is required to withhold or pay under applicable law with respect to any Partner shall be paid by the Partnership to the appropriate governmental authorities and shall be deducted from the Capital Account of such Partner as of the last day of the Fiscal Period or fiscal year with respect to which such amount is required to be withheld or paid.

Section 11.02 <u>Maintaining Books of Account</u>. Proper and complete books of account shall be kept at all times and shall be open to inspection by any Partner or their accredited representative at reasonable times during office hours.

Section 11.03 <u>Audit of Books</u>. The books of account and records of the Partnership shall be audited as of the end of each fiscal year by independent certified public accountants designated from time to time by the General Partner.

Section 11.04 <u>Reports to Partners</u>. The Partnership will seek to furnish to the Partners unaudited reports of the performance of the Partnership at least quarterly and the audited financial statements of the Partnership prepared by the Partnership's independent certified accountants as soon as practicable after the end of each fiscal year (using GAAP). In addition, as promptly as practicable after the end of each fiscal year, the Partnership shall send to each Partner a report indicating the amounts representing his respective share of net long-term capital gain or loss, net short-term capital gain or loss and operating profit or loss for purposes of reporting such amounts for Federal income tax purposes.

Section 11.05 <u>Amendment of this Agreement</u>. This Agreement may be amended by the General Partner in any manner that does not materially adversely affect any Limited Partner, to convert to a "Master-Feeder" structure or to effect any changes required by applicable laws or regulations. This Agreement may also be amended by action taken by the General Partner with the consent (which may be in the form of a negative consent) of the Limited Partners owning a majority-in-interest of the Capital Accounts owned by the Limited Partners at the time of the amendment, provided that such amendment does not discriminate among the Limited Partners.

Section 11.06 <u>Notices</u>. All notices to Limited Partners provided for under this Agreement will be in writing and will be deemed to have been duly given as indicated if sent to the Partner's address as set forth in the schedule in the files of the Partnership as of the date of such notice:

    (a)    If delivered in person or by courier, on the date it is delivered;

    (b)    If sent by certified or registered mail (airmail, if overseas) or the equivalent (return receipt requested), on the date that mail is delivered or its delivery is attempted;

    (c)    If sent by first-class mail, 2 days after the date of postmark;

    (d)    If sent by facsimile, on generation of confirmation; and

(e) If sent by e-mail, on receipt (by way of clarification, whether or not opened).

Notice by any Limited Partner to the Partnership will be deemed effective upon receipt by the Partnership.

A Partner may change his or its address for purposes of this Agreement upon 5 days' prior written notice to the General Partner.

Section 11.07 <u>Binding Effect of this Agreement</u>. This Agreement shall be binding on the successors, assigns and the legal representatives of each of the Partners.

Section 11.08 <u>Counterparts</u>. This Agreement may be executed in more than one counterpart with the same effect as if the Partners executing the several counterparts had all executed one document.

IN WITNESS WHEREOF, the undersigned has hereunto signed this Agreement on the date set forth below.

General Partner:

JABA LLC

By _____Sam Schwartz_____
Name: SAM BANKMAN
Title: MANAGING PARTNER
Date of Signature 12/30/2020

Limited Partner:

P█████ V. P█████
Type or print in name of Limited Partner

_____Cheuk_____
Signature of Limited Partner or Authorized Signatory

_____
Type or print in name and title of Authorized Signatory

Date of Signature: 2/1/2021

5

# EXHIBIT Q

4/26/22, 10:28 AM                    Capture https___www.youtube.com_watch_v=UmnNCSdwIgA -- 04-26-2022



# EXHIBIT R

PNC Bank, National Association
## Account Registration and Agreement

**PNC BANK**

PT45520

☐ Certification Status on File

| Legal Title | TIN | Home Phone # | Work Phone # | Email Address |
|---|---|---|---|---|
| SENECA VENTURES LLC | 8009 | | | |
| | | | | |

| Account Address | | Foreign Address |
|---|---|---|
| 2645 CARRIAGE WAY AURORA IL 60504 | | |

Check appropriate box for federal tax classification (required):

☐ Individual/sole proprietor or single-member LLC ☐ C Corporation ☐ S Corporation ☐ Partnership ☐ Trustee/Estate

☒ Limited liability company. Enter the tax classification (C = C corporation, S = S corporation, P = partnership)  S

Note: For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions)

Certification of Owner: Under penalties of perjury, I certify that:
(1) The number on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
(2) I am not subject to backup withholding because (a) I am exempt from backup withholding, (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
(3) I am a U.S. citizen or other U.S. person; and
(4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

If you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return, you must cross out item (2) in your certification.

☐ Check this box if you are a non-resident alien and complete W-8BEN. By checking this box, the only purpose this document will serve for is a Signature Card for the account. It will not serve as a W-9.

Account Agreement: By signing this Account Registration and Agreement and/or by using the account, by requesting and/or using and/or later adding any account-related services, including but not limited to Debit Card/ATM Card, Overdraft Protection, and PNC Bank Online services, I agree to be bound by the terms and conditions of the Account Agreement for (Business or Personal as applicable) Checking, Savings, Money Market Accounts, Certificates of Deposit, Retirement Accounts and Coverdell Education Savings Accounts and any applicable Schedule of Service Charges and Fees, as well as other terms and conditions that may apply to my PNC Bank account, account features and/or services. I agree that my account is subject to approval by PNC Bank. Where there is more than one account owner, the account is held as joint tenants with right of survivorship.

| Account # | Product | Branch | Effective Date | Application Date | Application # |
|---|---|---|---|---|---|
| 5818 | BUSINESS CHECKING | 9-7100789 04/15/2021 | 04/15/2021 | 1-A41K2TA |

The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

SENECA VENTURES LLC
RAVISHANKAR AVADHANAM MEM
MEMBER

X _Ravishankar A_ 4.15.2021
Signature / Date
X _____ Signature / Date
X _____ Signature / Date
X _____ Signature / Date
X _____ Signature / Date
X _____ Signature / Date

PNC Bank internal use only instructions: Please image this form via the MFD Scan to Folder process by selecting the Signature Card folder.

RDAOMS02A-0818

Page 1 of 1

**Account Number** 55818
**Scan Date** 2021 Apr 16
**Orig Acct Number** 0
**Orig Bank Number** 0
**Converted Acct Flag**