**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

COMMODITY FUTURES TRADING
COMMISSION,

         Plaintiff,

v.

SAM IKKURTY A/K/A SREENIVAS I
RAO, RAVISHANKAR AVADHANAM,
AND JAFIA LLC

         Defendants,

IKKURTY CAPITAL, LLC D/B/A ROSE
CITY INCOME FUND, ROSE CITY
INCOME FUND II LP, AND SENECA
VENTURES, LLC

         Relief Defendants.

Civil Action No.: 22-cv-02465

Honorable Mary M. Roland

Magistrate Judge Jeffrey Cummings

**JURY DEMAND**

## DEFENDANTS' ANSWER TO COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES AND OTHER EQUITABLE RELIEF

Defendants Sam Ikkurty, Jafia LLC ("Jafia"), Rose City Income Fund ("Fund I"), Rose City Income Fund II, LP ("Fund II"), and Seneca Ventures, LLC ("Seneca") (collectively, "Defendants") by and through their attorneys, for their answer to Plaintiff Commodity Futures Trading Commission's ("CFTC's") Complaint, state as follows:

### INTRODUCTION

Ikkurty established and managed Fund I and Fund II (collectively, "the Funds") with the assistance of legal counsel, third-party fund administrators, and accountants. The Funds were controlled by three operative documents: a Private Placement Memorandum ("PPM"), a Subscription Agreement ("SA"), and a Limited Partnership Agreement ("LPA"). Although

neither the PPM nor the SA is ever mentioned in the Complaint, the PPM set forth the investment objective and strategy, disclosures as to the risk of the investments, and the performance and management fees that the manager (Jafia) was entitled to. The SA required investors to acknowledge that they were accredited, and that they reviewed and were relying solely on the representations in the PPM. The PPM informed investors that the strategy was to invest in digital assets and cryptocurrency "staking," which involves locking up a digital asset to act as a validator of blockchain transactions, and then receiving "staking rewards," which are newly minted cryptocurrency. Ikkurty pursued this strategy in a transparent way, sharing the Funds' crypto wallet addresses in regular emails to investors so they could view the Funds' cryptocurrency holdings, transaction activity, and performance directly on the public Ethereum blockchain. In addition, at the end of the month, the third-party administrator independently calculated the net asset value of the Funds through (among other things) accessing the Funds' transaction history and holdings on the blockchain as well as the Funds' cash holdings, calculated any applicable management and performance fees for Jafia (as manager), and issued monthly statements to investors. The third-party administrator also transferred any applicable fees to Jafia and any distributions to be made to investors.

In overlooking the PPM and the SA, the CFTC's Complaint misses the relevant disclosures to investors, the nature of the cryptocurrency investment strategy, and the customary fees to which the fund manager was entitled. In overlooking the blockchain activity, the Complaint misses the transparency of the Funds' holdings and performance and erroneously alleges misappropriation by the Defendants.

## ANSWER

## I. INTRODUCTION

1.      Between at least January 2021 and the present ("Relevant Period"), Defendants Sam Ikkurty a/k/a Sreenivas I Rao ("Ikkurty"), Ravishankar Avadhanam ("Avadhanam") and Jafia, LLC ("Jafia") (collectively the "Defendants") fraudulently solicited and accepted over forty four million dollars from at least 170 members of the general public to participate in funds named Ikkurty Capital LLC d/b/a Rose City Income Fund, Rose City Income Fund II LP ("the Rose City funds") and Seneca Ventures LLC ("Seneca"), to purchase, hold and trade digital assets, commodities, derivatives, swaps and commodity futures contracts. The Defendants did not trade digital assets or commodity interests with participants' funds and return profits as promised; instead they misappropriated participants' funds.

**ANSWER:** Denied. Defendants state that they did not misappropriate funds from anyone, and that they invested millions of dollars in cryptocurrency assets and earned substantial income on those investments. Defendants further state that their investments and cryptocurrency transaction activity were visible to investors through the blockchain and the crypto wallet addresses provided to investors. In addition, third-party administrators to the Rose City funds independently calculated the net asset value of the funds and issued monthly statements and distributions to investors. Finally, Defendants refer to the accounting performed by StoneTurn pursuant to the Consent Order ("StoneTurn Accounting"), which provides a summary of the flow of funds.

2.      Defendants misappropriated most or all of the participant funds by distributing them to other participants, in a manner akin to a Ponzi scheme, transferring funds to other accounts under the control of and for the benefit of the Defendants, and transferring funds to an off-shore entity that is associated with a cryptocurrency exchange that does not allow US persons.

**ANSWER:** Denied. Defendants state that they did not misappropriate funds from anyone, and that they invested millions of dollars in cryptocurrency assets and earned substantial income on those investments. Defendants further state that their investments and cryptocurrency transaction activity were visible to investors through the blockchain and the crypto wallet addresses provided to investors. In addition, third-party administrators to the Rose City funds

independently calculated the net asset value of the funds and issued monthly statements and

distributions to investors.  Finally, Defendants refer to the StoneTurn Accounting for a summary

of the flow of funds.

3.　　By engaging in this conduct and the conduct further described herein, the
Defendants engaged, are engaging, or are about to engage in violations of the Commodity
Exchange Act ("Act"), 7 U.S.C. §§1-26.  Specifically, the Defendants have engaged, are
engaging, or are about to engage in violations of Section 4o(1)(A) and (B), 7 U.S.C. §
6o(1)(A),(B), which makes it unlawful for any commodity pool operator ("CPO") "by use of the
mails or any means or instrumentality of interstate commerce, directly or indirectly"—(A) "to
employ any device, scheme, or artifice to defraud any client or participant or prospective client
or participant" or (B) "to engage in any transaction, practice, or course of business which
operates as a fraud or deceit upon any client or participant or prospective client or participant."

**ANSWER:**  The allegations in Paragraph 3 are legal conclusions to which no response is

required.  To the extent a response is required, Defendants deny the allegations.

4.　　Furthermore, by engaging in a business that is of the nature of a commodity pool
and soliciting and accepting funds for the purpose of trading in commodity interests, the
Defendants have acted as a CPO without the benefit of registration with the CFTC, thereby
escaping regulatory scrutiny into their activities and violating Section 4m(l) of the Act, 7 U.S.C.
§ 6m(1).

**ANSWER:**  The allegations in Paragraph 4 are legal conclusions to which no response is

required.  To the extent a response is required, Defendants deny the allegations as they did not

trade in commodity interests.

5.　　Through their conduct, Defendants also engaged, are engaging, or are about to
engage in manipulative and deceptive acts with respect to contracts of sale of a commodity in
interstate commerce, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Commission
Regulation ("Regulation") 180.1(a), 17 C.F.R § 180.1(a)(1)-(3) (2021).

**ANSWER:**  The allegations in Paragraph 5 are legal conclusions to which no response is

required.  To the extent a response is required, Defendants deny the allegations.

6.　　Unless immediately restrained and enjoined by this Court, the Defendants are
likely to continue engaging in the acts and practices alleged in this Complaint and funds they
fraudulently obtained are likely to be misappropriated or otherwise dissipated.  Accordingly, the
CFTC brings this action pursuant to Section 6c of the Act, 7 U.S.C. §13a-1, to enjoin
Defendants' unlawful acts and practices and to compel their compliance with the Act.  The
CFTC also seeks civil monetary penalties and remedial ancillary relief, including restitution to

defrauded participants, disgorgement, pre- and post-judgment interest, and such other equitable relief as this Court may deem necessary. The Commission also requests that the Court order Relief Defendants Ikkurty Capital, LLC d/b/a Rose City Income Fund, Rose City Income Fund II LP, and Seneca Ventures, LLC to disgorge funds they received from Defendants' illegal activities and in which they have no legitimate interest.

**ANSWER:** Defendants deny the allegations in the first sentence of Paragraph 6, as they have neither fraudulently obtained any funds nor misappropriated or dissipated them. The remaining allegations in Paragraph 6 are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

## II.    JURISDICTION AND VENUE

7.    This Court has jurisdiction over this action under 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that U.S. district courts have jurisdiction to hear actions brought by the Commission for injunctive and other relief or to enforce compliance with the Act whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

**ANSWER:** Paragraph 7 asserts a legal conclusion and not an allegation against Defendants, and as such no response is required.

8.    Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants transacted business in this District, Defendant Avadhanam resides in this District, and certain of the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

**ANSWER:** Defendants deny that any of their acts or practices violated the Act, and to the extent that Paragraph 8 asserts a legal conclusion, no response is required.

## III.    PARTIES

9.    Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with administering and enforcing the Act and CFTC Regulations.

**ANSWER:** Admitted.

10.     Defendant Sam **Ikkurty** ("Ikkurty") a/k/a Sreenivas I Rao resides in Portland, Oregon.  Ikkurty has never been registered with the CFTC in any capacity.

**ANSWER:**  Admitted.  Defendants also state that Ikkurty was not required to register with the CFTC as he did not trade in commodity interests, but rather purchased and sold digital assets and purchased tokens held for staking.

11.     Defendant **Ravishankar Avadhanam** ("Avadhanam") resides in Aurora, Illinois. Avadhanam has never been registered with the CFTC in any capacity.

**ANSWER:**  Admitted.  Defendants also state that Avadhanam was not required to register with the CFTC as he did not trade in commodity interests.

12.     Defendant **Jafia, LLC** ("Jafia"), is a Florida company that Ikkurty established in 2006.  Ikkurty owns Jafia and is the sole officer, president, registered agent and authorized person for the entity.  Jafia has never been registered with the CFTC in any capacity.

**ANSWER:**  Admitted.  Defendants also state that no registration was required as Jafia did not trade in commodity interests.

13.     Relief Defendant **Ikkurty Capital LLC d/b/a Rose City Income Fund** ("Rose City Income Fund I") is a Florida corporation that was established in 2013.  Ikkurty is the Managing Member and registered agent for Rose City Income Fund I, and Jafia is the Manager. Rose City Income Fund I did not perform any legitimate services for Defendants and does not have any legitimate interest in any funds it received from or through Defendants.  Rose City Income Fund I has never been registered with the CFTC in any capacity.

**ANSWER:**  Defendants deny the allegations in sentence 3 of Paragraph 13 and state that the funds received by Fund I were invested in digital assets and cryptocurrency tokens held for staking as reflected in the public Ethereum blockchain.  Defendants admit that Fund I is a Florida Corporation, Ikkurty is its Managing Member and registered agent, Jafia is its Manager, and that Fund I has not been registered with the CFTC, but state that no registration was required given that Fund I did not trade in commodity interests.

14.     Relief Defendant **Rose City Income Fund II LP** ("Rose City") is a Delaware entity that was established on December 10, 2020, with its principal place of business in Portland, Oregon.  Ikkurty is the Principal, Officer and Managing Partner of Rose City.  Jafia is the General Partner of Rose City.  Ikkurty and Avadhanam run Rose City.  Rose City did not

perform any legitimate services for Defendants and does not have any legitimate interest in any funds it received from or through Defendants. Rose City has never been registered with the CFTC in any capacity.

**ANSWER:** Defendants deny the allegations in sentence 5 of Paragraph 14 and state that the funds received by Fund II were invested in digital assets and tokens held for staking as reflected in the public Ethereum blockchain. Defendants admit that Fund II is a Delaware entity established on December 10, 2020, Jafia is its General Partner, Ikkurty is its Principal, Officer and Managing Partner, and that Fund II has not registered with the CFTC, but state that no registration was required given that Fund II did not trade in commodity interests.

15. Relief Defendant **Seneca Ventures LLC** ("Seneca Ventures" or "Seneca") is a Wyoming entity that was established on April 14, 2021. Ikkurty and Avadhanam own Seneca Ventures. Seneca Ventures did not perform any legitimate services for Defendants and does not have any legitimate interest in any funds it received from or through Defendants. Seneca Ventures has never been registered with the CFTC in any capacity.

**ANSWER:** Defendants deny the allegations in sentence 3 of Paragraph 15 and further state that Seneca is an investor in Fund II, and therefore invested the funds it received in Fund II. Defendants admit that Seneca is a Wyoming entity established on April 14, 2021, Ikkurty and Avadhanam are Seneca's co-owners, and that Seneca has not registered with the CFTC, but state that no registration was required as that Seneca did not trade in commodity interests.

## IV.    FACTUAL ALLEGATIONS

*Background*

16. Beginning on or around October 1, 2017, Ikkurty launched Rose City Income Fund I, which also used the name Ikkurty Capital, LLC. Throughout the Relevant Period, the website for the fund has described the business as "a monthly income fund" "suited for income-oriented investors who depend on a steady distribution."

**ANSWER:** Defendants deny the allegations of Paragraph 16, except admit that Ikkurty launched Fund I in or around 2017, which previously used the name Ikkurty Capital LLC. Defendants further state that the Fund Documents contain a complete and accurate statement of

the terms of the fund. Defendants further state that Fund I's SA requires the Subscriber to acknowledge that "in making its decision to subscribe for an Interest, the Subscriber has relied solely upon the [PPM], the Partnership Agreement and independent investigations. . ." *See* Fund I SA 2(b).

17.     In a September 2018 post on the Rose City Income Fund I website, Ikkurty announced, "[w]e are pleased to announce to the partners that we have a 1-year return for the fund. In a severe bear market that we are currently experiencing in digital currencies, our 1-year return is 61.78%." The post goes on to encourage investors by stating, "[c]ompounding is a powerful force in investing . . . I feel we have a long runway to achieve growth [as] a digital currency market evolves."

**ANSWER:** Defendants deny the allegations in Paragraph 17 but state that Fund I generated a significant positive return up to September 2018. Defendants also refer to the Fund Documents for a complete set of investor disclosures and representations.

18.     On or about December 10, 2020, Ikkurty formally established Rose City, with himself as the Managing Member and Jafia as the Executive Officer. Rose City's business model is purportedly to sell limited partnership interests to participants, pool the limited partners' funds, and then "buy, sell and trade digital assets on cryptocurrency exchanges." Rose City represents that its "primary goal is to provide steady 15% per year distribution to our investors." Rose City represents that it "generates these returns via proof-of-stake mining," and by holding exposure to digital assets like Bitcoin and Ethereum. For example, Rose City represents that "Bitcoin is a great hedge against central banks . . . Our portfolio is ideally suited to hedge against money printing."

**ANSWER:** Defendants deny the allegations in Paragraph 18, but admit that Fund II did in fact buy, sell, and trade digital assets on cryptocurrency exchanges and generate returns through proof-of-stake mining, as demonstrated by the public Ethereum blockchain data shared with accredited investors. Defendants also refer to the Fund Documents for the statements and disclosures to investors, and state that Fund II's SA requires the Subscriber to acknowledge that "[t]he Subscriber is entering into [the Subscription Agreement] relying solely on the facts and terms set forth in this Agreement, the [PPM] and the Partnership Agreement, and it has received copies of all of those documents and none of the General Partner, the Investment Manager or any

other person has made any representations of any kind or nature to induce the Subscriber to enter into this Agreement except as specifically set forth in those documents." *See* Fund II SA 5(b).

19.     In reality, Defendants pooled the participant funds, and then distributed the majority of those funds as "profits" to other participants in a manner akin to a Ponzi scheme, or transferred funds to accounts controlled by and for the benefit of the Defendants.

**ANSWER:**  Denied.  Defendants further state that participant funds were invested through a cryptocurrency exchange, as reflected in the public Ethereum blockchain data shared with accredited investors, and that partners received equity in the partnership in exchange for their investments.  Defendants further state that the third-party administrator calculated and issued distributions to investors as well as management and performance fees to Jafia, as authorized by the Fund Documents.  Defendants also refer to the StoneTurn Accounting for a summary of the flow of funds.

20.     Of the more than $44 million Defendants accepted from participants during the Relevant Period, they transferred more than half to other participants and to entities they own and control.  Defendants also transferred approximately $18 million to an off-shore entity that is associated with a cryptocurrency exchange that does not allow US persons.  Regardless, Defendants never returned any funds from the exchange to any Rose City or Seneca account for distribution to participants.

**ANSWER:**  Denied.  Defendants further state that participant funds were invested with a cryptocurrency exchange as reflected in the public Ethereum blockchain.  Defendants further state that the third-party administrator transferred funds from Fund II to Jafia for applicable management and performance fees, as authorized by the Fund Documents, and to participants for payment of distributions.  Defendants refer to the StoneTurn Accounting for a summary of the flow of funds.

*Defendants' Solicitations*

21.     Throughout the Relevant Period, the Defendants have solicited participants to invest through a website, www.rosecityfund.com, on YouTube videos and through at least one limited partnership agreement they provide to participants.  Rose City's website, operated and authored by Ikkurty, represents that the fund's investment strategy is to invest "70% of the

fund's assets into proof-of-stake mining coins, using market-neutral strategies while having 30% of the fund [] exposed to Crypto assets like Bitcoin, Ethereum and other diversified crypto assets." Rose City's website claims that its philosophy is to "earn income with exposure to crypto assets" and the fund's goal is "to provide a steady income to our investors every month, while providing the upside to the crypto markets." Specifically, Rose City states that, "[o]ur number one goal is to provide a steady 15% per year in distribution, payable monthly."

**ANSWER:** Denied. Defendants further state that they neither uploaded a YouTube video nor solicited participants through a YouTube video, and refer to the Fund Documents for investor representations and disclosures. Defendants further state that the fund did in fact invest in proof-of-stake mining coins and crypto assets such as Bitcoin and Ethereum, as reflected on the public Ethereum blockchain.

22. On or about January 1, 2021, Defendants began soliciting participants to join the Rose City income fund by signing the Rose City Income Fund Limited Partnership Agreement as Limited Partners (the "Agreement").

**ANSWER:** Defendants admit the allegations in Paragraph 22, and further refer to the Fund Documents for the complete and accurate statement of the terms of the partnership. Defendants further state that participants were required to affirm that they were accredited investors, and to sign an SA acknowledging that "[t]he Subscriber is entering into [the Subscription Agreement] relying solely on the facts and terms set forth in this Agreement, the [PPM] and the Partnership Agreement, and it has received copies of all of those documents and none of the General Partner, the Investment Manager or any other person has made any representations of any kind or nature to induce the Subscriber to enter into this Agreement except as specifically set forth in those documents." *See* Fund II SA 5(b).

23. The Agreement identifies Jafia as the "General Partner" to the Agreement and all the participants who sign copies of the Agreement as the "Limited Partners."

**ANSWER:** Defendants deny the allegations in Paragraph 23 and refers to the Fund Documents for a complete and accurate statement of terms of the partnership. Defendants further state that participants were required to sign an SA acknowledging that "[t]he Subscriber

is entering into [the Subscription Agreement] relying solely on the facts and terms set forth in this Agreement, the [PPM] and the Partnership Agreement, and it has received copies of all of those documents and none of the General Partner, the Investment Manager or any other person has made any representations of any kind or nature to induce the Subscriber to enter into this Agreement except as specifically set forth in those documents." *See* Fund II SA 5(b).

24.     Pursuant to Section 1.03 of the Agreement, the purpose of the partnership is "to serve as a fund through which the assets of its Partners will be utilized to invest, hold and trade in digital currencies, cryptoassets, cryptocurrencies, decentralized application tokens and protocol tokens . . . and other financial instruments of any name and nature which exist now or are hereafter created . . ."

**ANSWER:**  Defendants deny the allegations in Paragraph 24 and refer to the Fund Documents for a complete and accurate statement of terms of the partnership.

25.     Pursuant to Section 3.02, Powers of the General Partner, the General Partner maintains, in relevant part, the following powers:

(a)     To purchase, hold, sell, sell short, cover and otherwise deal in Digital Assets and financial instruments of any sort and rights therein, including restricted and privately issued instruments, on margin or otherwise;

(b)     To loan its Digital Assets to other market participants and engage in "staking" of Digital Assets;

(c)     Write, purchase, hold, sell and otherwise deal in put and call options of any sort and in any combination thereof;

(d)     To purchase, hold, sell, sell short and otherwise deal in commodities, commodity contracts, commodity futures, financial futures (including index futures) and options in respect thereof;

(e)    To purchase, hold, sell, sell short and otherwise deal in currencies, options thereon and rights therein, including forward foreign currency exchange contracts;

(f)    To purchase, hold, sell and otherwise deal in derivatives, swap contracts, partnership interest, interests in other investment companies or any other financial instruments which exist now or are hereafter created; and

(g)    To conduct margin accounts with brokers ...

**ANSWER:**  Defendants deny the allegations in Paragraph 25 and refer to the Fund Documents for a complete and accurate statement of terms of the partnership.

26.    Pursuant to Section 4.04 of the Agreement, the General Partner is entitled to a "Management Fee," to be "calculated at an annual rate of 2.0% of each Capital Account." Capital Account is defined in the Agreement to include the limited partner's capital contributions, adjusted for net losses and profits, less withdrawals, taxes and Management Fee payments.

**ANSWER:**  Defendants deny the allegations in Paragraph 26 and refer to the Fund Documents for a complete and accurate statement of terms of the partnership, which provide for a performance fee in addition to a management fee, as is industry custom.

27.    By February 1, 2021, at least one individual signed the Agreement and joined Rose City's Limited Partnership.

**ANSWER:**  Admitted.

28.    Beginning in at least July 2021, Defendants solicited participants through a YouTube video that represented to prospective participants:

- "Rule 1: Pay 18% per year interest on our Crypto Savings Note on a monthly basis"

- "We offer a promissory note enforceable by law in the USA that pays 18% interest per year and returns the original principal at the end of 18 months. This is backed by the full faith and credit of Jafia LLC."

**ANSWER:** Denied, and Defendants further state that they neither uploaded a YouTube video nor solicited participants through a YouTube video, and refer to the Fund Documents for investor representations and disclosures.

29. In the same YouTube video, Defendants solicit participants by touting Rose City's "proven track record of generating a 48% yield" and go on to assure participants that Rose City "make[s] sure that the money you start with will not be lost."

**ANSWER:** Denied, and Defendants further state that they neither uploaded a YouTube video nor solicited participants through a YouTube video, and respectfully refer to the Fund Documents for investor representations and disclosures.

*Defendants' Solicitations Include False and Misleading Statements and Omissions*

30. Defendants included false and misleading statements and omissions of material facts intentionally or recklessly in their solicitations.

**ANSWER:** Denied.

31. Among other things, Defendants falsely misrepresent that 70% of the fund's assets are invested in proof-of-stake mining coins and also that the fund "earns" income from these assets. Defendants falsely misrepresent that the fund will "invest, hold and trade in digital currencies," "purchase, hold, sell, sell short and otherwise deal in commodities, commodity contracts, commodity futures, financial futures . . . options . . . derivatives, swap contracts," and that participants would earn 15% annual returns on their investment. Also, Defendants falsely misrepresent that participants' principal investment would not be lost, that Rose City was generating a 48% yield, and that the fund's management fee was 2%.

**ANSWER:** Defendants deny the allegations of Paragraph 31 and refer to the Fund Documents for the investor representations and disclosures, which provide for a performance fee in addition to a management fee. Defendants further state that the public Ethereum blockchain data, which was shared with the accredited investors, reflects that the fund's assets were invested

13

in digital assets and proof-of-stake mining coins, and that the fund earned income in the form of staking rewards from these holdings.

32.     Among other things, Defendants omitted that the fund was not earning profits and that Defendants were misappropriating participant funds by transferring them to other participants, to entities the Defendants owned and/or controlled, and also to an off-shore entity.

**ANSWER:**  Denied.  Defendants further state that participant funds were invested through a cryptocurrency exchange, as reflected in the public Ethereum blockchain data. Defendants further state that the third-party administrator paid management and performance fees to Jafia, as authorized by the Fund Documents, and paid distributions to investors, as reflected on the monthly investor statements.

33.     Defendants made these misrepresentations, false statements and omissions to solicit participants to invest their money with them.

**ANSWER:**  Denied.

### The Misappropriation

34.     During the Relevant Period, Defendants accepted participant funds into bank accounts in the names of Seneca Ventures and/or Rose City.  Neither Seneca Ventures nor Rose City performed any legitimate services for Defendants and neither have any legitimate interest in or entitlement to the funds.

**ANSWER:**  Defendants deny the allegations of Paragraph 34 but admit that they accepted participant funds in the accounts of Seneca and Fund II.  Defendants also refer to the Fund Documents for a summary of services provided.

35.     On April 15, 2021, Defendant Avadhanam opened a business checking account for Seneca Ventures with Bank A.  Avadhanam was the only signer for this account.

**ANSWER:**  Admitted.

36.     Between April 15, 2021 and June 4, 2021, Defendants Ikkurty and Avadhanam accepted deposits of $1,707,000 from 24 participants into the Seneca Ventures account at Bank A.  According to memos on some of the participants' wire deposits, the funds were for, among other things, "investment," "investment Rose City," "Rose City Fund II," and "ATTN: Ravishankar Avadhanam, Sam."

**ANSWER:** Defendants deny the allegations of Paragraph 36 but admit that investments were received by Ikkurty and Avadhanam in accordance with the Fund Documents. Defendants also refer to the StoneTurn Accounting for a summary of the flow of funds.

37.     Between April 15, 2021, and June 4, 2021, Defendants Ikkurty and Avadhanam did not transfer funds from Bank A to buy, sell, or trade digital assets. Rather, during that time period, Defendants Ikkurty and Avadhanam transferred $1,686,829 of participant funds to other accounts under the control of and for the benefit of the Defendants.

**ANSWER:** Defendants deny the allegations in Paragraph 37, and state that Fund II invested in digital assets through a cryptocurrency exchange as reflected in the public Ethereum blockchain data, which was shared with investors. Defendants also refer to the StoneTurn Accounting for a summary of the flow of funds.

38.     Bank A was closed in June 2021.

**ANSWER:** Defendants admit that a bank account for Seneca was closed. Defendants further state that they did not initiate the closure and lack knowledge and information sufficient to form a belief concerning the truth of the remaining allegations in this paragraph and therefore deny them.

39.     Then, in June 2021, Defendants Ikkurty and Avadhanam opened another business checking account with Bank B in the name of Seneca Ventures. In so doing, Seneca represented itself to be a "technology consulting firm in software programming." Ikkurty and Avadhanam are both signers on Seneca Ventures' account at Bank B.

**ANSWER:** Defendants admit that they opened an account for Seneca in June 2021 and that both Ikkurty and Avadhanam are signers on the account. Defendants deny the remaining allegations in Paragraph 39.

40.     Between June 2021 and January 2022, Defendants Ikkurty and Avadhanam accepted deposits of at least $10,400,000 from at least 122 participants into the Seneca Ventures account at Bank B. According to memos on these wires, the funds were for the purpose of "investment", "initial investment" and "additional investment."

**ANSWER:** Defendants admit that investments were received by Ikkurty and Avadhanam in accordance with the Fund Documents. Defendants also refer to the StoneTurn accounting for a summary of the flow of funds. Defendants deny the remaining allegations in Paragraph 40.

41.     During this period, Defendants Ikkurty and Avadhanam did not transfer any funds from Bank B to a trading account at any "exchange" or dealer. Rather, during that time period, Defendants Ikkurty and Avadhanam transferred $25,000 of participant funds to other participants and at least $9,916,333 of participant funds to other accounts under the control of and for the benefit of the Defendants.

**ANSWER:** Defendants deny the allegations in Paragraph 41 and further state that Fund II invested in digital assets through a cryptocurrency exchange, as reflected in the public Ethereum blockchain data, which was shared with investors. Defendants also refer to the StoneTurn accounting for a summary of the flow of funds.

42.     Bank B was closed in January 2022.

**ANSWER:** Defendants admit that a bank account for Seneca was closed. Defendants further state that they did not initiate the closure and lack knowledge and information sufficient to form a belief concerning the truth of the remaining allegations in this paragraph and therefore deny them.

43.     In December 2021, Defendants Ikkurty and Avadhanam opened an account for Seneca Ventures at Bank C. Between December 2021 and the present, Defendants accepted $5,400,000 of funds into this account. The account at Bank C remains open.

**ANSWER:** Defendants admit that they opened an account for Seneca and accepted investments into the account. Defendants also refer to the StoneTurn accounting for a summary of the flow of funds. Defendants further state that they lack knowledge and information sufficient to form a belief concerning the truth of the remaining allegations in this paragraph and therefore deny them

44.     On May 18, 2021, the Defendant Ikkurty opened a business bank account for Rose City at Bank D.  According to the account opening application, the purpose of the account is "trading," and the anticipated account activity was "Funds In/Out from Operating Account (LP Subscriptions)/ wires to/from exchanges (Coinbase Pro) to buy crypto assets." Defendant Ikkurty further described the types of transactions as "[f]unds in from selling limited partnership interests . . ." Ikkurty is the only Principal/Officer and authorized signer on the account.

**ANSWER:**  Admitted.  Defendants further state that Fund II invested in crypto assets.


45.     Between May 18, 2021 and March 31, 2022, Defendants Ikkurty and Avadhanam accepted at least $32,307,846 from at least 42 participants into the Rose City account at Bank D.

**ANSWER:**  Defendants admit that they accepted investments into the Fund II.

Defendants also refer to the StoneTurn accounting for a summary of the flow of funds.

Defendants lack information sufficient to form a belief concerning the truth of the remaining

allegations in this paragraph and therefore deny them.

46.     In addition, during this same period, at least $10,621,162 of participant funds from the Seneca Ventures accounts at Bank A and Bank B were transferred to the Rose City account at Bank D.

**ANSWER:**  Defendants admit that participant funds were transferred from Seneca to

Fund II, as Seneca was an investor in Fund II.  Defendants lack information sufficient to form a

belief concerning the truth of the remaining allegations in this paragraph and therefore deny

them.

47.     Between May 18, 2021 and March 31, 2022, Defendants Ikkurty and Avadhanam transferred at least $23,908,892 of participant funds from the Rose City account to an account belonging to Jafia, and at least $860,502 to an account under the control of and for the benefit of the Defendants.

**ANSWER:**  Denied, and Defendants further state that only the third-party fund

administrator was able to transfer funds from the Fund II account to the Jafia account for

payment of management and performance fees, as authorized by the Fund Documents.

Defendants also refer to the StoneTurn Accounting for a summary of the flow of funds.

17

48.     Between, May 18, 2021 and March 31, 2022, Defendants transferred approximately $5,846,720 of participant funds from the Rose City account at Bank D to other participants.

**ANSWER:**  Denied, and Defendants further state that only the third-party fund administrator was able to transfer funds from the Fund II account for payment of distributions, which were a return of invested capital, as provided for in the Fund Documents and as noted in the monthly investor statements.  Defendants also refer to the StoneTurn Accounting for a summary of the flow of funds.

49.     During this same time period, Rose City also transferred $9,200,000 from the Rose City account at Bank D to an off-shore entity associated with a crypto exchange.

**ANSWER:**  Defendants deny the allegations in Paragraph 49 but admit that Fund II transferred millions of dollars to Genie Technologies, a cryptocurrency exchange, for the purpose of purchasing digital assets, as reflected in the public Ethereum blockchain data, which was shared with investors, and as contemplated by the Fund Documents.  Defendants also refer to the StoneTurn Accounting for a summary of the flow of funds.

50.     In addition to the Seneca and Rose City bank accounts, on or about August 24, 2020, Defendant Ikkurty opened an account for Jafia, at Bank E in Portland, Oregon.  Between July 2021 and March 31, 2022, Defendant Ikkurty accepted at least $23,908,802 into the Bank D account.  During the Relevant Period, Defendant Ikkurty transferred over $6.5 million from the Jafia account to other accounts under the control of and for the benefit of the Defendants.  Defendants Ikkurty and Jafia transferred $8,650,000 to the same off-shore entity.

**ANSWER:**  Defendants admit that Ikkurty opened a bank account for Jafia in August 2020, and that the Fund II bank account received investments between July 2021 and March 2022, and that Ikkurty and Jafia also transferred money to a cryptocurrency exchange, for the purpose of purchasing digital assets.  Defendants also refer to the StoneTurn accounting for a summary of the flow of funds.  Defendants deny the remaining allegations in Paragraph 50.

### V.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS THEREUNDER

### COUNT I

**Violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1):
Failure to Register as a CPO**

51.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

**ANSWER:**  With respect to Paragraph 51, Defendants incorporate their answers to the

preceding paragraphs as though fully set forth herein.

52.     Section 1a(10) of the Act, 7 U.S.C. § 1a(10), defines the term "commodity pool" to mean "any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests, including any—(i) commodity for future delivery, security 12 futures product, or swap; (ii) agreement, contract, or transaction described in section 2(c)(2)(C)(i) or section 2(c)(2)(D)(i); (iii) commodity option authorized under section 4c; or (iv) leverage transaction authorized under section 19 [of the Act]."

**ANSWER:**  Paragraph 52 asserts a legal conclusion and not an allegation against

Defendants, and as such no response is required.

53.     7 U.S.C. § 1a(11) defines a CPO as any person "engaged in a business that is of the nature of a commodity pool, investment trust, syndicate or similar form of enterprise and who, in connection therewith, solicits, accepts, or receives from others, funds, securities or property . . . for the purpose of trading in commodity interests."

**ANSWER:**  Paragraph 53 asserts a legal conclusion and not an allegation against

Defendants, and as such no response is required.

54.     7 U.S.C. § 6m(1) makes it unlawful for any CPO, unless registered with the CFTC, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

**ANSWER:**  Paragraph 54 asserts a legal conclusion and not an allegation against

Defendants, and as such no response is required.

55. Defendants acted as a CPO, as defined by 17 C.F.R. § 1.3, by soliciting, accepting or receiving funds from others for the purpose of trading in commodity interests.

**ANSWER:** The allegations in Paragraph 55 are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

56. Defendants violated 7 U.S.C. § 6m(1) **by** acting as a CPO without the benefit of registration with the Commission.

**ANSWER:** The allegations in Paragraph 56 are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

57. Each use by Defendants of the mails or any means or instrumentality of interstate commerce in connection with their business as a CPO without being registered with the Commission, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of 7 U.S.C. § 6m(1).

**ANSWER:** The allegations in Paragraph 57 are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

## COUNT II

### Violations of Section 4o(1)(A)-(B), 7 U.S.C. § 6o(1)(A)-(B): Fraud by a CPO

58. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

**ANSWER:** With respect to Paragraph 58, Defendants incorporate their responses to the preceding paragraphs as though fully set forth herein.

59. 7 U.S.C. § 6o(1)(A)-(B) makes it unlawful for any commodity pool operator or associated person of a commodity pool operator, "by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly" (A) "to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant" or (B) "to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant."

**ANSWER:** Paragraph 59 asserts a legal conclusion and not an allegation against Defendants, and as such no response is required.

60. Defendants, acting as a CPO or associated persons of a CPO, violated 7 U.S.C. § 6o(1)(A)-(B) during the Relevant Period by making misrepresentations and omissions of material fact to participants and prospective participants, including, among other things,

20

misrepresenting the purpose of the pools, their historical performance and expected profits, and fee structure; and failing to disclose that they were misappropriating participant funds for personal benefit and that they used participant funds to pay other participants, in the manner of a Ponzi scheme, and that they were not registered with the CFTC as a CPO.

**ANSWER:** The allegations in Paragraph 60 are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

61. Defendants also violated 7 U.S.C. § 6o(1)(A)-(B) during the Relevant Period by misappropriating participant funds for personal benefit, including transferring them to accounts under their control and using participant funds to pay other participants, in the manner of a Ponzi scheme.

**ANSWER:** The allegations in Paragraph 61 are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

62. Each act of misrepresenting and omitting material information, including, but not limited to, those specifically alleged herein, and each act of misappropriation, constitutes a separate and distinct violation of 7 U.S.C. § 6o(1)(A)-(B).

**ANSWER:** The allegations in Paragraph 62 are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

## COUNT III

**Violations of Section 6(c)(1) of the Act and Regulation 180.1, 7 U.S.C. § 9(1), and 17 C.F.R. § 180.1(a): Deceptive Scheme or Contrivances**

63. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

**ANSWER:** With respect to Paragraph 63, Defendants incorporate their responses to the preceding paragraphs as though fully set forth herein.

64. 7 U.S.C. § 9(1) makes it unlawful "for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any . . . contract of sale of any commodity in interstate commerce . . . any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate."

**ANSWER:** Paragraph 64 asserts a legal conclusion and not an allegation against Defendants, and as such no response is required.

65.    17 C.F.R. § 180.1(a) makes it "unlawful for any person, directly or indirectly, in connection with any . . . contract of sale of any commodity in interstate commerce . . . to intentionally or recklessly: (1) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or misleading statement of material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; [or] (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person."

**ANSWER:**  Paragraph 65 asserts a legal conclusion and not an allegation against

Defendants, and as such no response is required.

66.    Bitcoin and Ethereum are "commodities" under Section la(9) of the Act, 7 U.S.C. § la(9), and contracts for their sale are subject to the prohibitions of Section 6(c)(1) of the Act and Regulation 180.1.

**ANSWER:**  Paragraph 66 asserts a legal conclusion and not an allegation against

Defendants, and as such no response is required.

67.    From at least January 2021 through the present, as described above, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a), by, among other things, in connection with contracts of sale of commodities in interstate commerce, making or attempting to make untrue or misleading statements of material fact or omitting to state or attempting to omit to state material facts necessary in order to make statements made not untrue or misleading, such as failing to disclose that they were misappropriating participant funds, making misrepresentations to their participants about their historical performance and fee structure; and failing to disclose to participants that they used participant funds to pay other participants, in the manner of a Ponzi scheme.

**ANSWER:**  The allegations in Paragraph 67 are legal conclusions to which no response

is required.  To the extent a response is required, Defendants deny the allegations.

68.    From at least January 2021 through the present, as described above, Defendants also violated 7 U.S.C. § 9(1) of the Act and 17 C.F.R. § 180.1(a) by, among other things, in connection with contracts of sale of commodities in interstate commerce, misappropriating participant funds to make distributions to other participants in a manner akin to a Ponzi scheme or transferring funds to accounts controlled by the Defendants.

**ANSWER:**  The allegations in Paragraph 68 are legal conclusions to which no response

is required.  To the extent a response is required, Defendants deny the allegations.

69.    By the foregoing conduct, Defendants directly or indirectly used or employed or attempted to use or employ a manipulative or deceptive device or contrivance or manipulative

device, scheme, or artifice to defraud participants and engaged in this conduct intentionally or recklessly.

**ANSWER:**  The allegations in Paragraph 69 are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

70.     By the foregoing conduct, the Defendants directly or indirectly used or employed or attempted to use or employ a manipulative or deceptive device or contrivance or omitted to state material facts necessary in order to make their statements to participants not untrue or misleading, and engaged in such conduct intentionally or recklessly.

**ANSWER:**  The allegations in Paragraph 70 are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

71.     By the foregoing conduct, the Defendants directly or indirectly used or employed or attempted to use or employ a manipulative or deceptive device or contrivance or engaged or attempted to engage in an act, practice, or course of business which operated or would operate as a fraud or deceit, and engaged in such conduct intentionally or recklessly.

**ANSWER:**  The allegations in Paragraph 71 are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

72.     Each and every overt action in furtherance of the use or attempted use of a manipulative or deceptive device or contrivance is alleged herein as a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

**ANSWER:**  The allegations in Paragraph 72 are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

## VI.     AFFIRMATIVE DEFENSES

Defendants repeat, reallege, and incorporate herein by reference their responses to the allegations of Paragraphs 1 through 72 of the Complaint and assert the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

The CFTC's claims against Defendants fail in whole or in part because any alleged investor reliance on online solicitations or representations is precluded by the Fund

Documents, which control the terms of the investment, and require each investor to acknowledge receipt and review of the PPM, which contains robust disclosures as to the investment objective and attendant risks.

## SECOND AFFIRMATIVE DEFENSE

The CFTC's claims against Defendants fail in whole or in part because Defendants relied in good faith upon the information, opinions, advice, reports, or statements made by attorneys, certified public accountants, auditors, fund administrators, and other expert professionals.

## THIRD AFFIRMATIVE DEFENSE

The CFTC's claims against Defendants fail in whole or in part because Defendants fulfilled the stated investment objective in the PPM by investing in digital assets and proof-of-stake mining as demonstrated by the public Ethereum blockchain, which was shared with investors so they could view real-time positions and performance of the digital assets.

## FOURTH AFFIRMATIVE DEFENSE

The CFTC's claims against Defendants fail in whole or in part because Defendants did not wire any funds from Fund accounts but rather engaged third-party fund administrators who independently calculated the month-end net asset value of the funds, calculated distributions to investors and prepared and issued monthly investor statements, calculated performance and management fees to Jafia, and then paid distributions and fees as authorized by the Fund Documents.

## FIFTH AFFIRMATIVE DEFENSE

The CFTC's claims against Defendants fail in whole or in part because Defendants did not act with the state of knowledge or intent necessary to give rise to liability. No act or omission of Defendants was malicious, willful, wanton, reckless or made with intent to

violate any statute or law. Defendants acted at all relevant times in good faith, without scienter, and without actual knowledge that any of the alleged statements or omissions were false or misleading.

### SIXTH AFFIRMATIVE DEFENSE

The CFTC's claims against Defendants fail in whole or in part because any alleged false statements, omissions or claims were immaterial.

### SEVENTH AFFIRMATIVE DEFENSE

The CFTC's claims against Defendants fail in whole or in part because Defendants' conduct was in compliance with, or authorized by, laws or regulations administered by a regulatory body or officer acting under state or federal statutory authority.

### EIGHTH AFFIRMATIVE DEFENSE

The CFTC's claim for injunctive relief is unavailable because (a) there has been no violation of the commodities laws, and (b) there is no likelihood of any future violations of applicable commodities law. Thus, the CFTC cannot establish that there is a reasonable likelihood that Defendants would violate the commodities laws in the absence of injunctive relief.

### NINTH AFFIRMATIVE DEFENSE

The CFTC's claim for disgorgement should not be granted because Defendants did not receive profits, ill-gotten gains or any form of pecuniary benefit that was derived from the alleged misconduct.

### TENTH AFFIRMATIVE DEFENSE

The CFTC's claims against Defendants fail in whole or in part because they never operated as a commodity pool operator and never traded in commodity interests.

WHEREFORE, Defendants respectfully request that this Court enter judgment in their favor and against Plaintiff Commodity Futures Trading Commission, award costs of suit, and any other such further relief as this Court deems just and appropriate.

In accordance with Fed. R. Civ. P. 38(b), Defendants demand a trial by jury on all issues so triable.

Dated: August 8, 2022

Respectfully submitted,

By:

SALVATORE PRESCOTT PORTER & PORTER

By: _/s/ Andrew C. Porter_____
    Andrew C. Porter
1010 Davis Street
Evanston, IL 60201
Telephone:  (312) 283-5711
aporter@sppplaw.com

SEWARD & KISSEL LLP

By: _/s/ Jaimie Nawaday_____
    Jaimie Nawaday (*pro hac vice*)
One Battery Park Plaza
New York, NY  10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421
nawaday@sewkis.com

*Attorneys for Defendants Sam Ikkurty, Jafia LLC, Rose City Income Fund, Rose City Income Fund II, LP, and Seneca Ventures, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on August 8, 2022, a true and correct copy of the foregoing **Defendants' Answer to the Complaint for Injunctive Relief, Civil Monetary Penalties and Other Equitable Relief** was served electronically upon all counsel of record via the Electronic Case Filing system of the Court.

<u>/s/ *Andrew C. Porter*</u>